0807

FRIARSGATE, INC., Respondent v. The TOWN OF IRMO, and Robert E. Lyon, Jr., Mayor, Libby L. Green, William A. Harris, John H. Nance and G. Richardson Weiters, as members of the Council; and Priscilla McMahon, as Clerk and Zoning Administrator of the Town of Irmo, Appellants.

(349 S. E. (2d) 891)

Court of Appeals

*James B. Richardson, Jr.,* of Columbia and *S. Jahue Moore,* of *Kirkland, Taylor, Wilson, Moore, Deneen & Allen,* West Columbia, *for appellants.*

*George I. Alley,* of *Kirkland, Aaron & Alley* and *Frederick A. Gertz,* of *Gertz & Moore,* Columbia, *for respondent.*

Heard Sept. 16, 1986.

Decided Oct. 20, 1986.

CURETON, Judge:

In this equity action, Friarsgate sought to enjoin application of a new zoning ordinance enacted by the Town of Irmo (Irmo) that precluded its construction of a condominium project. Irmo appeals the trial judge's granting of the injunction. We affirm in part and reverse in part.

Friarsgate, a real estate developer, owns a tract of land located in the Town of Irmo in Richland County. Prior to April 15, 1980, Irmo had no zoning regulations and Friarsgate was free to use its property without limitation. In 1978 or 1979, Friarsgate began preparations to construct a condominium project on the property. The proposed development consisted of fourteen buildings and one hundred eight units. These preparations consisted of completing market research and financial studies, developing drainage, grading, landscaping, sewer and water distribution plans, and platting the tract. Friarsgate also cleared a portion of the tract and obtained building permits for one building containing five units on March 21, 1980. Thereafter, it began constructing piers and foundations for the building.

On April 15, 1980, Irmo enacted a comprehensive zoning ordinance. This ordinance placed Friarsgate's property in a single family residential district which prohibited use of the property for condominiums. As a result, Friarsgate stopped construction on the five units. Irmo now claims that the building permits have expired.

After learning that building permits would not be issued for the remaining units, Friarsgate instituted this suit to enjoin Irmo from enforcing the new zoning ordinance as it relates to its property. The trial judge held that Friarsgate acquired a vested right to complete the entire condominium project by reason of its expenditure of funds and other actions taken prior to the enactment of the zoning ordinance.

We are asked to address the following issues on appeal: (1) whether Friarsgate acquired a vested right to complete the entire condominium project although building permits were issued for and actual construction began on only five of the

units before the property was zoned; and (2) whether Friarsgate lost its right to complete construction of the five units for which building permits were issued where the permits were allowed to expire for failure to pursue construction.

Generally, in American jurisdictions a landowner who uses his property for a lawful purpose before the enactment of zoning which subsequently prohibits that use may continue the nonconforming use after the enactment of zoning unless the use clearly constitutes a public nuisance. Otherwise, the landowner would be deprived of a constitutionally protected right. The right to continue a prior nonconforming use is often stated in terms of the owner having acquired a "vested right" to continue the prior use. 4 A. Rathkopf, *The Law of Zoning and Planning* Section 50.01 (1986); Anderson, *American Law of Zoning* Sections 6.01-6.07 (1986).

Vested rights under zoning ordinances are undergirded by the same constitutional footing which precludes retroactive application of zoning ordinances. The majority rule regarding vested rights is:

> A landowner will be held to have acquired a vested right to continue and complete construction of a building or structure, and to initiate and continue a use, despite a restriction contained in an ordinance or an amendment thereof where, prior to the effective date of the legislation and in reliance upon a permit validly issued, he has, in good faith, (1) made a substantial change of position in relation to the land, (2) made substantial expenditures, or (3) incurred substantial obligations.

4 A. Rathkopf, *The Law Of Zoning and Planning* Section 50.03 (1986).

South Carolina follows the general law that a landowner acquires a vested right to continue a nonconforming use already in existence at the time his property is zoned in the absence of a factual showing that the continuance of the nonconforming use would be detrimental to the public's health, safety, or welfare. *James v. City of Greenville,* 227 S. C. 565, 584, 88 S. E. (2d) 661, 671 (1955) (Legge, J., concurring.). However, a contemplated use of property by a landowner on the date a zoning ordinance becomes effective to preclude such a use is not protected as a

nonconforming use. 101A C.J.S. *Zoning and Land Planning* Section 161 (1979). Here, the trial judge properly focused on the central issue in the case as being whether "Friarsgate sufficiently establish[ed] a use prior to the enactment of the zoning ordinance to permit it to continue that use as [a] nonconforming use?"

In holding that Friarsgate may complete the project, the trial judge relied heavily upon the case of *City Ice Delivery Co. v. Zoning Board of Adjustment,* 262 S. C. 161, 203 S. E. (2d) 381 (1974). In *City Ice* the property owner acquired a permit to build a food store in a residential area. A zoning ordinance was subsequently enacted which prohibited such an establishment. City Ice was permitted to continue its construction currently underway prior to the effective date of the zoning ordinance. When the owner attempted to install gasoline pumps, however, the City's building inspector stopped the installation. The Zoning Board of Adjustment denied City Ice's appeal. The circuit court reversed the Board's decision claiming that construction of the food store and gas pumps was one project which was known to City officials at the time the building permit was issued for the store. On appeal to the Supreme Court, the Court had to decide if "the proper county officials were chargeable, at the time the building permit was issued, with knowledge of [City Ice's] contemplated use of the property for the sale of gasoline." The Court stated:

> To come within the "vested rights" principle applied in *Pure Oil Division v. City of Columbia,* 254 S. C. 28, 173 S. E. (2d) 140 [City Ice] must establish that, at the time the permit to build a food store was issued, the proper county officials were chargeable with knowledge that the operation of the food store and the sale of gasoline was an entire project, so that the expenditure of funds on the construction of the food store building amounted to an expenditure toward installation of the gasoline tanks and pumps.

262 S. C. at 166, 203 S. E. (2d) at 383-84.

Friarsgate also cites the case of *Conway v. City of Greenville,* 254 S. C. 96, 173 S. E. (2d) 648 (1970) as supportive of the trial court's decision. In *Conway,* a landowner had used

a portion of her property in her construction business prior to annexation of the property by the City of Greenville. Immediately after annexation, the property, which was previously free of zoning, became subject to a zoning classification that prohibited the landowner's business use of the property. Conway sued the City to have the property rezoned as commercial, claiming she had acquired a vested right to use the entire tract for business purposes. The circuit court disagreed and denied Conway relief. On appeal, the Supreme Court was faced with the question of whether a partial use of a tract for a business purpose preempts the entire tract for such purpose. The decision points out that though "[a]dmittedly, all of the area [there] involved was not actually being occupied in the operation of the construction business at the time of annexation," "the character and adaptability of the entire tract in question was primarily for business use" and that the nature of its use "clearly implied an appropriation of the entire area for business purposes." 254 S. C. at 102-104, 173 S. E. (2d) at 651-52.

Both cases are factually distinguishable from the case at hand. *City Ice* dealt with the scope of construction permitted under a building permit. The Court had to decide only if there was evidence to show that the landowner had established, at the time the permit to build a food store was issued, that the proper county officials were chargeable with knowledge that the operation of the food store and the sale of gasoline was an entire project, so that the expenditure of funds on the construction of the food store building amounted to an expenditure toward the installation of the gasoline tanks and pumps. Implicit in the decision is the finding that a single permit could have been obtained for the construction of the store and installation of the gasoline tanks. In the instant case, building permits were required for construction of each unit within the condominium project.[1]

Likewise, in *Conway v. City of Greenville*, the Court had to determine the extent of a nonconforming use by deter-

---

[1] Section 7-1004(a)(1) of the Richland County Building Code as it read in 1980 stated that a building permit was required to "construct, enlarge, alter, repair, move, improve, remove, convert, or demolish any building or structure. . . ."

mining the degree to which the landowner had used her property for business purposes prior to zoning. The Court found that the landowner had over a number of years used a substantial portion of her property in her business and had appropriated the entire tract to business usage. The facts of this case do not demonstrate that Friarsgate ever physically used or adapted a substantial portion of its property to condominium usage. Beyond the land on which construction of the five units began, the only other physical work done on the tract was to clear trees from some indefinite portion of the tract.

In this case, Friarsgate could have obtained building permits for all fourteen buildings in the project prior to enactment of the zoning ordinance. It appears from the record that Friarsgate did not do so because a decision to build the entire project was contingent on the financial success of the first five units. If market response to the first units was poor, the project would not be completed. Thus, at the time the zoning ordinance was enacted, Friarsgate had no firm commitment to build the project.

We hold that since a building permit was required to construct each of the fourteen buildings in the project, the commencement of construction on one building did not constitute an appropriation of the entire tract to the project. Moreover, the record is silent as to just what expenditures were made or work done on the project after the issuance of the building permits. Presumably, the bulk of the expenditures occurred prior to the issuance of the permits.[2] In *Whitfield v. Seabrook*, 259 S. C. 66, 190 S. E. (2d) 743 (1972), the Court rejected the landowner's claim of a vested right to construct a proposed apartment complex, finding that expenditures for plans and specifications incurred prior to the issuance of the building permit could not have been made in reliance upon the subsequently issued permit.

Friarsgate also argues in its brief and at trial that its claim to a vested right to complete the project rested principally upon a lack of zoning in the area at the time it began planning and expending funds on the project.

---

[2] Our reading of the record shows that only construction of the piers and foundations on the five units was begun after issuance of the permits.

It argues it had a right to expect that zoning would not be imposed on its property to preclude construction of the condominiums. The record does not reveal that this argument was made before the trial court. It is a much quoted · rule of law that we cannot grant relief on an issue argued for the first time on appeal. *American Hardware Supply Co. v. Whitmire*, 278 S. C. 607, 300 S. E. (2d) 289 (1983). Moreover, the trial judge's findings are contrary to this position. No issue is taken with his ruling that "[s]ince one does not have a vested right in the existing classification of land an owner must show something more than mere expectation that zoning will not change." *See Town of Vienna Council v. Kohler*, 218 Va. 966, 244 S. E. (2d) 542 (1978). Further, a landowner has no right to insist that his property not be restricted by a zoning regulation absent a showing that he has, prior to the effective date of the regulation, established a nonconforming use. 101A C.J.S. *Zoning and Land Planning* Section 70 (1979).

Finally, Irmo argues error in the failure of the trial court to find that the building permits issued to construct the five units expired because Friarsgate admittedly suspended work for over a year. The trial judge found that Friarsgate stopped construction because town officials threatened to commence a lawsuit to halt further construction, thus reasoning that Friarsgate was justified in not completing the units. Of course, this finding is based upon disputed testimony. Our duty to review the trial court's findings of facts in an equity case does not require us to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility. *Klutts Resort Realty, Inc. v. Down 'Round Development Corp.*, 268 S. C. 80, 232 S. E. (2d) 20 (1977).

In *Conway v. City of Greenville*, the Court discussed abandonment of a land use as follows:

It must appear that there was a discontinuance of the nonconforming use with the intent to relinquish the right to so use the property. The question is largely one of intention and must be determined from all of the surrounding facts and circumstances.

254 S. C. at 105, 173 S. E. (2d) at 653.

Giving due deference to the role of the trial judge in judging credibility of witnesses, we hold that under the circumstances of this case, Friarsgate was justified in not pursuing construction of the five units and it did not abandon its nonconforming use of the land on which construction of the five condominium units were commenced.

Accordingly, the order of the trial judge is

Affirmed in part and reversed in part.

BELL, J., concurring and

GOOLSBY, J., dissenting (with opinion).

GOOLSBY, Judge (dissenting):

I respectfully dissent. I concur in the findings and conclusions of the trial judge that Friarsgate satisfied the test prescribed by the Supreme Court in *City Ice Delivery Co. v. Zoning Board of Adjustment for the County of Charleston,* 262 S. C. 161, 203 S. E. (2d) 381 (1974), for determining whether an owner may complete the construction of a project that constitutes a nonconforming use where the construction began before a zoning ordinance took effect.

Here, the Town of Irmo admitted it "was aware of and had knowledge of [Friarsgate's] planned development of Londonway Condominiums prior to [its] enactment of [the] zoning ordinance." Moreover, Friarsgate, before the effective date of the zoning ordinance, spent substantial funds in the planning, engineering, and construction of the project and obtained the permits required to begin the construction of the first phase of the project. Under these circumstances, Friarsgate's failure to obtain the permits required to construct all fourteen buildings did not prevent it from acquiring a vested right to complete the entire project.

I would affirm.