## 23383

P. John DeSTEFANO, Appellant v. CITY OF CHARLESTON, Respondent.

(403 S.E. (2d) 648)

Supreme Court

*Andrew K. Epting, Jr.* and *W. Andrew Gowder, Jr.*, both of *Wise & Cole, P.A.*, Charleston, *for appellant.*

*William B. Regan* and *Frances I. Cantwell*, Charleston, *for respondent.*

Heard Feb. 19, 1991.

Decided April 22, 1991.

TOAL, Justice:

This appeal involves whether the City of Charleston properly rezoned certain portions of a developer's property, and whether the City's act of withholding building permits until the developer granted a drainage easement constitutes a temporary taking of the developer's property without just compensation. The lower court ruled in favor of the City on all issues. We affirm.

## FACTS

John DeStefano, a real estate developer for twenty-five years, purchased a tract of land on James Island in 1984. Finding it too difficult to comply with Charleston County drainage requirements, DeStefano sought and obtained annexation of the tract into the City of Charleston. After annexation, DeStefano secured a zoning classification of DR-12 (a multifamily designation), allowing for twelve units to the acre.

In May 1985, the City Engineering Department approved the plaintiff's engineering plans for the construction of a road (Stefan Drive), utilities, and drainage for the development entitled DeStefano of Riverland Place. The plans showed a twenty-foot drainage easement along the rear lot lines of all the lots on the east side of Stefan Drive. This easement was to be dedicated to the City and would drain the lots on the east side of the road.

In October 1985, the City Planning and Zoning Commission gave final approval to a forty-lot subdivision plat for Riverland Place. The approved plat did not show the easement on

the lots on the east side of Stefan Drive. The Deputy City Engineer indicated that after the Planning and Zoning Commission had approved a subdivision plat, if engineering plans required the delineation of easements, roads or other public areas, then such items would be superimposed on the plat prior to its being recorded. In November 1985, DeStefano's forty-lot plat was revised to show the easement.

This plat was never recorded, as a dispute arose over the proper eastern boundary of Riverland Place. The dispute concerned whether a ditch which ran along the eastern border was within DeStefano's property line. The ditch followed the general line of the twenty-foot-wide drainage easement DeStefano planned to grant to the City. DeStefano relinquished all claim to the ditch area, believing the City would no longer require a drainage easement from him if he did not own the ditch. Deputy City Engineer John Fersner erroneously agreed with DeStefano that no drainage easement would be required of him. Subsequently, DeStefano received a $87,000 settlement for the survey error in a suit he brought against the surveyor.

In January 1986, DeStefano submitted a new plat for recording which eliminated the easement and showed altered depths for the lots on the east side of Stefan Drive that had been affected by the boundary change. The width of several of these lots was changed as well. This plat also showed an additional twelve lots on the west side of Stefan Drive, making this a plat for a subdivision of fifty-two lots, as opposed to forty lots on the previously approved plat.

Unaware that this new plat was not the one previously approved by the Planning and Zoning Commission, the Zoning Administrator erroneously told the Deputy City Engineer the plat had been approved. Though the Deputy City Engineer knew of the boundary change, he was unaware of the addition of the twelve lots on the new plat, and apparently would not have stamped the plat for recording had he realized this fact, since the Ordinances of the City of Charleston clearly require the Planning and Zoning Commission to approve a plat such as the one submitted. The plat was recorded on January 27, 1986.

Over the next several weeks, DeStefano transferred lots pursuant to this recorded plat. It is not clear when the City Staff learned of the discrepancy between the approved forty-lot plat and the recorded fifty-two-lot plat, but when it did, it

sought to have the recorded plat brought to the Planning and Zoning Commission for approval. The matter was first on the Planning and Zoning Commission meeting agenda on February 18, 1986.

At this meeting, a number of neighboring residents expressed concern that the multifamily dwelling character of Riverland Place was exacerbating drainage problems in the area. Prior to the recordation of the plat in January 1986, a neighborhood petition containing residents' concerns with stagnant and standing water and other drainage-related problems was delivered to a member of the Planning and Zoning Commission. At its February meeting and subsequent meetings, the Planning and Zoning Commission deferred action on the plat to further investigate the drainage matter. The Planning and Zoning Commission has not to date approved the recorded fifty-two-lot plat. After several months of attempting to work out a solution with DeStefano, the City ultimately refused to issue new building permits in Riverland Place until a drainage easement was granted, but did honor all previously issued building permits.

By June 1986, the City had agreed to a reduced width of the easement, but nonetheless insisted on the easement. Additionally, the City indicated to the plaintiff a willingness to be lenient with variances. In October 1986, DeStefano indicated he would re-plat the area in question for single family zoning and would grant the City the drainage easement. A twenty-six-lot plat was submitted to the Planning and Zoning Commission in February of 1987 and approved subject to verification of DeStefano's drainage calculations. However, DeStefano never recorded this plat. The City, over DeStefano's objection, subsequently rezoned the area as single family residential (SR-4) in order to alleviate drainage and density problems. Shortly thereafter, DeStefano filed suit against the City, seeking damages for a temporary taking of his property and the right to build multifamily dwellings on the property. The lower court ruled in favor of the City, and DeStefano timely appealed.

## LAW/ANALYSIS

We address three arguments made by DeStefano as grounds for reversal: (1) that he has a vested right to a D-12 multifamily dwelling zoning classification for his property; (2)

that even if he has no vested rights, the rezoning of his property to single family residential (SR-4) was arbitrary and capricious; and (3) that the City's refusal to issue building permits until DeStefano dedicated a drainage easement to the City worked a "temporary taking" of his property.

I. *Vested Rights*

The record reflects that DeStefano has, in effect, divided his James Island property into three segments. DeStefano has consistently held back one portion of the tract as a residual area, developing no plans for the area for construction of any kind. This area has not been divided into lots and is simply raw acreage. In a second portion of the property, multifamily dwellings have been constructed. The City has not requested removal of any of these buildings and has continued to honor building permits previously issued for this area. The third portion of DeStefano's property is hotly disputed. The record convinces us, however, as it convinced the trial judge, that DeStefano has made only those kind of preliminary improvements to the land which serve to give him flexibility to resell lots in the area to a variety of potential buyers.

"[A] landowner acquires a vested right to continue a nonconforming use *already in existence at the time his property is zoned* in the absence of a factual showing that the continuance of the nonconforming use would be detrimental to the public's health, safety, or welfare." *Friarsgate v. Town of Irmo*, 290 S.C. 266, 269, 349 S.E. (2d) 891, 893 (Ct. App. 1986) (emphasis added). Obviously, DeStefano cannot meet this test as to the residential portion of his property as no nonconforming use exists. We proceed to address the remainder of DeStefano's rezoned property.

In *Friarsgate*, a real estate developer invested money in drainage, grading, sewer, and water plans. The land was platted for condominiums, building permits were obtained, and foundations were begun for five units. The Town of Irmo then passed a comprehensive zoning ordinance restricting the property to single family residential construction. The Court of Appeals held that failure to obtain a substantial number of building permits at one time indicated there was no firm commitment to building the project, and, therefore, no hardship to the developer resulted from the Town of Irmo's actions.

Similarly, DeStefano suffered no hardship from rezoning. He voluntarily changed his plans and sought approval for a twenty-six-lot single family plat in March 1987. While he did expend money in the layout of a road and the installation of utilities, he testified that his role in the development of the property was to prepare lots for resale. What was ultimately constructed on the lots was to be solely determined by those persons and entities to whom DeStefano sold. No building plans, specifications, or particular development scheme was made binding on any of his purchasers or prospective purchasers. At least one of his Contracts of Sale contained an express contingency that the lots be re-platted for single-family use. It appears that DeStefano was responding to what the market would bear, as opposed to pursuing a comprehensive development scheme. Therefore, we reject DeStefano's argument of vested rights to multifamily zoning in the disputed areas.

II. *Arbitrary and Capricious Rezoning*

DeStefano contends the City arbitrarily and capriciously rezoned his property to single family residential, pointing to unfair treatment and alleged procedural irregularities. We reject this contention.

While it is undisputed that other property owners in the general area were not rezoned to SR-4, many of these landowners were determined to have vested rights. Additionally, at this time there was a James Island study underway to develop a unified plan for traffic control, housing density, and preserving the environment. A plan was formally adopted after the rezoning; however, minutes of the Planning and Zoning Commission indicate that the Commission had already established goals for reducing housing density and redirecting multifamily development away from single family residential areas. Riverland Place is near both single family and multifamily housing areas. Because DeStefano's property also involved a sizeable amount of acreage and had a known drainage problem, it was neither arbitrary nor capricious, but a fairly debatable decision, to rezone to SR-4. *Rushing v. City of Greenville*, 265 S.C. 285, 217 S.E. (2d) 797 (1975) (holding the actions of a municipality will not be overturned if the government decision was "fairly debatable," but will do so only if the

action was so unreasonable as to impair or destroy constitutional rights). Moreover, rezoning was consistent with DeStefano's request for the twenty-six-lot plat for single family residential construction. We therefore do not find any arbitrary or capricious action on the part of the City regarding rezoning.

### III. *Temporary Taking*

DeStefano asserts that the City's insistence upon a drainage easement before it would issue building permits of any kind amounts to a "temporary taking" of his property. He contends he is entitled to damages from the City because its refusal to grant building permits has prevented him from being able to sell or develop his property. Because he believes he will prevail with regard to either: (1) forcing the City to now issue the permits; or (2) having the City's actions declared wrongful *ab initio;* DeStefano seeks damages for a "temporary" taking of his property.[1] We hold DeStefano has failed to demonstrate a taking of any kind and is hence not entitled to any damages.

DeStefano concedes the City may rightfully be concerned with drainage problems in connection with zoning or the issuance of building permits. He further concedes the City may require an easement on a property owner's land to address such a drainage problem, and that it is proper for the City to condition the issuance of a building permit upon the granting of a drainage easement.[2] DeStefano takes issue only with whether there exists a drainage problem in this case justifying such an easement.[3]

---

[1] The United States Supreme Court recently held that, in proper circumstances, aggrieved property owners are entitled to a remedy for a State's "temporary" taking of their property. *First Evangelical Lutheran Church of Glendale v. Los Angeles County*, 482 U.S. 304, 107 S. Ct. 2378, 96 L. Ed. (2d) 250 (1987).

[2] The general rule appears to be that a City or other appropriate political subdivision may condition permits for subdivision construction upon the dedication of an easement for "water supply, drainage, and sewers." 82 AM. JUR. (2d) *Zoning and Planning*, § 166 at 666 (1976).

[3] DeStefano cites *Nollan v. California Coastal Comm'n*, 483 U.S. 825, 107 S. Ct. 3141, 97 L. Ed. (2d) 677 (1987) for the proposition the resolution of whether a regulation substantially advances a legitimate state interest is whether there is a reasonable nexus between the means and a legitimate state purpose. We do not view DeStefano's argument as one involving a *Nollan* analysis; rather, we see it as more of a factual dispute concerning whether a drainage problem exists in Riverland Place justifying the City's actions.

We hold the record amply supports the trial judge's conclusion that no taking occurred because the City was simply requiring the drainage easement to alleviate drainage difficulties, "as required by local regulation to protect subsequent purchasers in this [Riverland Place] development."[4] (Tr. 44) The trial judge made several findings of fact convincingly supporting his conclusion that a serious drainage problem existed in the area which warranted the City's actions. *See, e.g.,* Tr. 23 (referring to the complaints and petitions of neighboring residents about drainage problems); Tr. 24 (referring to the City Engineer's recommendations of actions to rectify the drainage system problems in the development). We therefore find DeStefano's contention in this regard meritless.

Lastly, DeStefano makes the argument that the City is estopped from refusing to issue any building permits because City officials allowed him to record his January 1986 plat and he relied upon this recording. Though the City admits its Deputy City Engineer and Zoning Administrator made errors which led to the recording of DeStefano's plat, the City denies that estoppel applies.

The City of Charleston Ordinances clearly demonstrate that the Deputy City Engineer and the Zoning Administrator here were acting beyond their authority in allowing the recording of the January 1986 plat because it added twelve lots to the previously submitted and approved plat. Such a change in the plat had to, by Ordinance, be approved by the City Engineer and the City Planning and Zoning Commission before recording. (Tr. 980) We have addressed this issue before, and have stated:

> No estoppel can grow out of dealings with public officers of limited authority, and the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error

---

[4] It is clear that the trial court was referring, in its mentioning of a "local regulation," to Section 54-51 of the Ordinances of the City of Charleston, which provides in part:

No platting of land for residential use or purpose shall occur in areas subject to periodic flooding by normal tides, swamps, marshes and other undrained areas, unless suitable provision is made for satisfactory drainage....

or mistake of . . . one of its officers or agents. . . .

*Farrow v. City Council of Charleston,* 169 S.C. 373, 382, 168 S.E. 852, 855 (1933) (quoting 10 R.C.L. 707, 708). Our Court of Appeals has also addressed this issue. In *South Carolina Coastal Council v. Vogel,* 292 S.C. 449, 453, 357 S.E. (2d) 187, 189 (Ct. App. 1987) the Court stated:

> A governmental body is not immune from the application of the doctrine of estoppel *where its officers or agents act within the proper scope of their authority* . . . The public cannot be estopped, however, by the unauthorized or erroneous conduct or statements of its officers or agents which have been relied on by a third party to his detriment.

(Emphasis in the original.) We therefore deny DeStefano relief on this ground.

Accordingly, the judgment of the lower court is

Affirmed.

GREGORY, C.J., and HARWELL, CHANDLER and FINNEY, JJ., concur.