2003

Thomas B. DANIELS, Respondent v. CITY OF GOOSE CREEK, A Municipal Corporation, and Michael Heitzler, Mayor of Goose Creek, Trudy Elam, Margerite Brown, Dina Dukes, Mark Phillips, Orris Caldwell, Wendell McRae, City Council Members, Appellants.

(431 S.E. (2d) 256)

Court of Appeals

*M. Dawes Cooke, Jr.,* of *Barnwell, Whaley, Patterson & Helms,* and *Samuel R. Clawson,* of *Clawson & Staubes,* Charleston, *for appellants.*

*Arnold Goodstein,* of *Goodstein & Goodstein,* Summerville, *for respondent.*

Heard Apr. 19, 1993; Decided May 3, 1993.

Reh. Den. June 24, 1993.

*Per Curiam:*

Thomas B. Daniels sued the City of Goose Creek and its

council members (collectively referred to as "the City") to enjoin the City from enforcing a change in the zoning of Daniels's property. Both sides moved for summary judgment. The trial court held that (1) Daniels had a vested right to the zoning as it existed when he purchased the property, (2) the City was estopped from arguing that the previous zoning was in error and from denying Daniels the right to use his property for commercial purposes, and (3) the restrictive covenants for the subdivision where Daniels's property was located were not applicable due to laches. The City appeals. We reverse.

## I.

In October 1985, Daniels purchased lots 7, 16 and 17 in block D in the Greenview Acres subdivision in Goose Creek from Loudin and Agnes Rohr. At that time lot 7 was designated on the official zoning map as commercial property. In January 1984, in response to Rohr's inquiry, the zoning administrator had written to Rohr stating that lot 7 was located in an area-wide business zone. Rohr provided Daniels with a copy of this letter as well as Rohr's guarantee in the sales agreement that lot 7 was zoned commercial.

In February 1989, Daniels received notification that the City would hold a public hearing regarding the zoning classification of lot 7. Daniels attended hearings in March and April, and the City rezoned the property from general commercial to a medium density residential classification. Daniels subsequently brought this action and both sides moved for summary judgment.

The trial court found Daniels demonstrated a vested right to develop the property by virtue of (1) the purchase price he paid, and (2) his consultation with a construction company about building a shopping center. The trial court also noted that Daniels had no way of knowing that the zoning map was incorrect when he brought the land. The court focused on the letter from the zoning administrator to Rohr that the lot was zoned commercial and stated that Daniels was "well-justified in assuming his land could be commercially developed." Accordingly, the trial court held further that the City was estopped from asserting that the zoning of lot 7 was erroneous on the date Daniels purchased the property. Finally, the trial

court held that the City had no standing to raise any issue regarding the restrictive covenants for the subdivision, and the covenants were unenforceable against Daniels anyway due to laches. The City appeals.

## II.

The City first argues that the trial court erred in finding Daniels acquired a vested right to develop his property for commercial purposes. We agree.

A landowner acquires a vested right to continue a nonconforming use already in existence at the time his property is zoned in the absence of a showing that the continuance of the use would constitute a detriment to the public health, safety or welfare. *DeStefano v. City of Charleston,* 304 S.C. 250, 403 S.E. (2d) 648 (1991); *F.B.R. Investors v. County of Charleston,* 303 S.C. 524, 402 S.E. (2d) 189 (Ct. App. 1991); *Friarsgate, Inc. v. Town of Irmo,* 290 S.C. 266, 349 S.E. (2d) 891 (Ct. App. 1986). However, a *contemplated* use of property by a landowner on the date a zoning ordinance becomes effective precluding such use is not protected as a nonconforming use. *F.B.R. Investors; Friarsgate, Inc.*

In *Friarsgate, Inc.,* the developer sought to build a condominium project of fourteen buildings containing five units each. The developer completed market research and financial studies, developed drainage, graded and landscaped the area, prepared sewer and water distribution plans and platted the tract. The developer also cleared a portion of the tract and obtained building permits for one building containing five units. The developer then began construction of piers and foundations for the five units. The City subsequently enacted a zoning ordinance which prohibited the construction of condominiums in the area. This Court held that since permits were required to build each building, the commencement of construction of one building did not constitute an appropriation of the entire tract to the project, so that no vested right to complete the entire project existed. The Court added:

[A] landowner has no right to insist that his property not be restricted by a zoning regulation absent a showing that he has, prior to the effective date of the regulation, established a nonconforming use.

349 S.E. (2d) at 893. *See also Town of Vienna Council v. Kohler*, 218 Va. 966, 244 S.E. (2d) 542 (1978), cited with approval in *Friarsgate, Inc.* (the zoning of land is an exercise of police power; property owners have no vested right to continuity of zoning of the general area in which they reside, and the mere purchase of land does not create a right to rely on existing zoning); *F.B.R. Investors* (expenditures for acquisition of the property, as well as excavations for a road and sewer, were *not* sufficient to establish a vested right); *DeStefano* (expenditures for land acquisition, the layout of a road and the installation of utilities were *insufficient* to establish a vested right to multifamily zoning for the main part of a parcel; there was no vested right to nonconforming uses in a residual tract because no nonconforming use existed at the time the City changed its ordinance).

In his deposition, Daniels stated that he had not incurred any expenses towards developing the nonconforming use. A plat of lot 7 indicates there are no structures or nonconforming uses in place. The deed does not describe buildings or improvements on lot 7. The City asserted in its memorandum in support of summary judgment that the lot was vacant and Daniels did not refute this assertion.

We hold that Daniels had no right to continuity of the commercial zoning of lot 7. Had he established a commercial use of the property, the City would have been unable to enforce the zoning change to prevent the continuation of what would have become a nonconforming use under the new zoning. However, the City would still have been able to change the zoning. Daniels's *contemplated* use of the property on the date the City changed the zoning was not protected as a nonconforming use, and Daniels acquired no vested right to go forward with that contemplated use. *F.B.R. Investors*. Accordingly, we reverse the trial court's finding that Daniels acquired a vested right to commercially develop lot 7.

### III.

The City next argues that the trial court erred in finding the City estopped from asserting that the commercial zoning classification was erroneous and from denying Daniels the right to use the property as commercial. We agree.

Generally, estoppel does not lie against the government to prevent the due exercise of its police power or to thwart the application of public policy. *Town of Sullivan's Island v. Byrum,* — S.C. —, 413 S.E. (2d) 325 (Ct. App. 1992). The acts of government agents acting within the scope of their authority can give rise to estoppel against the government, but unauthorized conduct or statements do not. *Id.* The claiming party must prove:

(1) lack of knowledge and the means of knowledge about the truth of the matter in question;

(2) justifiable reliance on the government's conduct; and

(3) a prejudicial change in position.

*Id.*

In *Abbeville Arms v. City of Abbeville,* 273 S.C. 491, 257 S.E. (2d) 716 (1979), the subject parcel was mistakenly listed as high density residential zoning but should have been listed as zoned medium density residential. The developer relied upon an official zoning map and a letter from the city zoning administration concerning the zoning *before* making expenditures of about $100,000 for property acquisition, architectural and engineering fees, loan commitments and other development costs. The City of Abbeville refused to issue the developer a building permit for his proposed multifamily housing project, claiming the zoning map was defective and that the parcel was, and always had been, zoned under a medium density residential classification. The developer sued the City and the trial court held the City was estopped by its representations and actions from denying the permit. The City of Abbeville appealed.

The Supreme Court held the City Council was acting within the scope of its authority when it enacted the zoning ordinance, including the official zoning map. The Court also held there was no evidence that the zoning administrator was acting outside the scope of his authority in issuing the letter confirming that the property was zoned for high density residential on the official zoning map. Under those circumstances, the City was not immune from application of the doctrine of estoppel. The Supreme Court then analyzed the case under the estoppel doctrine as follows:

(1) **Relying Party's Lack of Knowledge and Means of Knowledge of the Truth.** The developer checked the zoning ordinance, including the official zoning map, which indicated the property was zoned for his intended purposes. This zoning was confirmed through the zoning code administrator's letter. The Supreme Court found the defect in the zoning map was latent and the developer lacked knowledge or the means of knowledge as to the existence of the defect.

(2) **Reliance Upon the Conduct of the Party Estopped.** The City of Abbeville conceded this element.

(3) **Prejudicial Change of Position on the Part of the Relying Party.** The developer spent between $90,000 and $100,000 in preparation of the project. The Supreme Court noted that the record reflected that a large portion of the expenditures was not recoverable if the project failed. The Court held this demonstrated a clear prejudicial change of position.

*Abbeville Arms*, 257 S.E. (2d) at 718. The Supreme Court concluded that the City was estopped from denying the developer a building permit based upon the City's correction of the zoning ordinance. *Id.*

In this case, the trial court relied primarily upon the *Abbeville Arms* case. *Abbeville Arms* is easily distinguished, however, because the City did not rely on an argument that the map was erroneous to try and prevent Daniels's proposed use of the property. Instead, the City conceded that the existing zoning was commercial and amended the ordinance upon proper notice and procedure to change the zoning on Daniels's parcel to residential. Daniels admitted in his deposition that no one from the City, or anyone else, assured him that the commercial zoning classification of his property would not change after he bought it. The only way he could have avoided enforcement of a zoning change was if he had established prior to the change an existing use inconsistent with the new zoning, which he did not do. Accordingly, we reverse the finding that the City was estopped from preventing Daniels from using his property for commercial purposes.

## IV.

We need not decide whether the doctrine of laches would bar application of the restrictive covenants to Daniels. The trial court also held the City had no standing to raise enforcement of the covenants, the City did not appeal this ruling, and it accordingly became the law of this case. This unappealed ruling renders the laches ruling moot, since reversal would not change the result.

We note additionally that the City argues further:

> If this court should find that *Abbeville Arms* is on point, however, the Defendants would respectfully ask the Court to conclude that that decision is inconsistent with subsequent decisions of the Supreme Court to the extent that it would permit a landowner to rely upon the continued zoning classification of his property in the absence of an established nonconforming use.

Of course, the decisions of the Supreme Court bind this Court as precedents. S.C. Const. Art. V, § 9. Thus, any modification or limiting of *Abbeville Arms* must be done by the Supreme Court.

Accordingly, the judgment of the trial court is

Reversed.