561 S.E.2d 627

**LAKE FRANCES PROPERTIES, A South Carolina General Partnership, Appellant,**

v.

**CITY OF CHARLESTON, Respondent.**

No. 3459.

Court of Appeals of South Carolina.

Heard Feb. 6, 2002.

Decided March 4, 2002.

Rehearing Denied April 18, 2002.

Paul A. Dominick and David J. Parrish, both of Nexsen, Pruet, Jacobs, Pollard & Robinson, of Charleston, for appellant.

William B. Regan and Frances I. Cantwell, both of Regan, Cantwell & Stent, of Charleston, for respondent.

PER CURIAM:

Lake Frances Properties ("LFP") instituted this action seeking damages attributed to the rezoning of its property from multi-family to single family development. The trial court found the rezoning did not constitute an unconstitutional taking and granted summary judgment in favor of the City of Charleston (the "City"). LFP appeals. We affirm.

## FACTS/PROCEDURAL BACKGROUND

LFP is a partnership that was created for the purpose of purchasing and developing approximately 43.12 acres of land known as Area "C", located on James Island, South Carolina in the City of Charleston. The contract to sell from Lawton Bluff Co. to LFP required LFP to construct a road and sewer system on the property in contemplation of a multi-family development of not more than 547 units. The total purchase price for the property was $1,210,000.

Area "C" was one of four tracts of land involved in a highly publicized zoning dispute in the 1970s when Lawton Bluff sought to have the property zoned for multi-family residential housing. A compromise was reached whereby Area "C" was allowed to be zoned for multi-family residential use upon Lawton Bluff's assent to place restrictive covenants on the entire property. Lawton Bluff filed its restrictive covenants

in April 1980 and the City ratified its rezoning ordinance in May.

LFP paid almost $100,000 for the infrastructure for the property before 1988 and according to LFP it has paid property taxes based on the multi-family residential zoning throughout its ownership of the property. LFP marketed the property for sale as zoned for multi-family residential throughout the 1980s and 1990s. In July 1984, LFP sold a portion of its property to Leslie Land Company, Inc., which constructed Harbor Oaks, a condominium complex.

On August 16, 1996, LFP contracted to sell 17.5 acres to a third party. This contract was contingent on the prospective buyer's ability to build 222 multi-family residential units on the tract. In response to a letter written by the prospective buyer, Lee Batchelder, the Charleston zoning administrator, wrote on November 8, 1996, that he "determined that 492 residential units may be developed within the 31.6 acre parcel accessed off Lake Frances Drive."

On November 26, 1996, the Charleston City Council passed a resolution requesting the Planning Commission consider rezoning the subject property to single-family residential (SR 1) because such restriction would "be compatible and responsive to current housing trends, uses and traffic patterns so as to protect and preserve property values, enhance traffic safety, and promote the economic well being, health and safety of the public." No compromise regarding the proposed rezoning was reached. Thereafter, the Planning and Zoning Commission held a public meeting on February 19, 1997. At the conclusion of this meeting, the planning commission voted to recommend the rezoning.

Following a public hearing on April 22, 1997, the City Council adopted Ordinance 1997–120, which rezoned the subject property to SR–1. LFP's attorney later explained that "as a result of the City's down zoning, the first contract fell through. It totally went away."

On June 6, 1997, LFP contracted to sell the remaining 31.59 acres to Shawn W. Howell and Martin H. Shulken ("Howell & Shulken") for $1,100,000. In August 1997, Howell & Shulken made variance requests to the city's zoning board. However, by letter dated September 16, 1997, Batchelder explained that

"due to the opposition from the surrounding residents, the staff will not be recommending in favor of [Howell & Shulken's] variance application for the 31.6 acre tract on Lake Francis [sic] Drive." Thereafter, Howell & Shulken voluntarily withdrew its variance request and terminated the purchase contract with LFP.

LFP filed its summons and complaint alleging four causes of action for (1) breach of contract, (2) uncompensated taking, (3) equitable estoppel, and (4) tortious interference with contractual relations. Approximately one year after the City answered the complaint, LFP sold the entire 31.59 acre tract to Bonnie and Anthony McAlister for $1,100,000. The parties subsequently consented to refer the case to the master in equity. Thereafter, the City moved for summary judgment. The Master granted the City's motion for summary judgment on all counts. LFP appeals the grant of summary judgment on its taking cause of action.

## STANDARD OF REVIEW

Summary judgment is a drastic remedy that should be cautiously invoked so no person will be improperly deprived of a trial of disputed factual issues. *Baughman v. AT & T,* 306 S.C. 101, 112, 410 S.E.2d 537, 543 (1991). Summary judgment is appropriate when it is clear there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP; *Toomer v. Norfolk S. Ry.,* 344 S.C. 486, 489, 544 S.E.2d 634, 635 (Ct.App.2001). Summary judgment is not appropriate, however, where further inquiry into the facts of the case is desirable to clarify the application of the law. *Carolina Alliance for Fair Employment v. S.C. Dep't of Labor, Licensing & Regulation,* 337 S.C. 476, 484, 523 S.E.2d 795, 799 (1999).

In determining whether any triable issue of fact exists as will preclude summary judgment, the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n,* 332 S.C. 54, 61, 504 S.E.2d 117, 121 (1998); *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.,* 336 S.C. 53, 59, 518 S.E.2d 301, 304 (Ct.App.1999).

## DISCUSSION

### A.

LFP contends the master incorrectly deemed that a building permit is required to vest a nonconforming use, arguing the "Judge's Order cites 38 A.L.R.5th 737 § 2 for the proposition that a building permit is needed to vest a nonconforming use, and then observes that Lake Frances never applied for a building permit."

We disagree with LFP's characterization of the master's order. A review of the master's order demonstrates he did not find that a building permit is a prerequisite to obtaining a vested right to a nonconforming use. Rather, he found that the absence of a permit application was only one factor of many that, when viewed as a whole, demonstrates LFP's "actions do not rise to the level of a prior nonconforming use as that term is recognized by South Carolina courts." As more fully explained below, we find it unnecessary under the facts presented here to find that a building permit is a *per se* prerequisite to a vested, nonconforming use.

### B.

LFP avers the zoning reclassification of its property more than a decade after it was acquired caused the property to be sold at a discount of at least one million dollars. LFP argues it acquired a vested right to develop the subject property under the original multi-family zoning classification when it incurred expenses for developing the infrastructure of the property. We disagree.

A landowner acquires a vested right to continue a nonconforming use already in existence at the time his property is zoned in the absence of a showing that the continuance of the use would constitute a detriment to the public health, safety or welfare. *Whaley v. Dorchester County Zoning Bd. of Appeals*, 337 S.C. 568, 578–79, 524 S.E.2d 404, 409–10 (1999) (citing *Daniels v. City of Goose Creek*, 314 S.C. 494, 497, 431 S.E.2d 256, 258 (Ct.App.1993)). The burden of proving a nonconforming use is on the party claiming a prior nonconforming use. *Whaley*, 337 S.C. at 579, 524 S.E.2d at 410.

The record reflects that LFP made limited improvements to the subject property during the approximate thirteen years it owned it. In fact, the City does not dispute that LFP built-up the infrastructure for the property to sustain a multi-family development. However, the infrastructure designed for the property was not limited to multi-family use, but could also be used to support single family development. In addition, since the completion of the infrastructure, the property has remained dormant since at least May of 1988.

We find no suggestion in the record that LFP ever intended or attempted to construct structures on the property. Instead, LFP continued to market the property for sale for over a decade. LFP apparently only entered into contracts to sell the property to prospective buyers who would then develop the property as they desired. As the master noted, LFP never sought or obtained any building permits for actual construction of structures on the property. Had LFP sought or obtained permits for work beyond the mere preparation of the property for future multi-family development, this fact might weigh heavily in favor of granting a vested right to continue any projects that have already begun. *See F.B.R. Investors v. County of Charleston,* 303 S.C. 524, 527, 402 S.E.2d 189, 191 (Ct.App.1991) (developer only obtained a vested right to complete development of Phase I of a project in a concurrently rezoned area under the James Island Land Use Plan before any substantial improvement or expenses were incurred to develop Phase II of the project); *Friarsgate, Inc. v. Town of Irmo,* 290 S.C. 266, 349 S.E.2d 891 (Ct.App. 1986) (developer acquired a vested right to complete only one building, comprised of fourteen out of a total 108 condominium units, because Friarsgate had only obtained building permits for and actually began constructing the first building when Irmo adopted a comprehensive zoning ordinance which, in part, precluded condominiums).

■ Generally, a zoning ordinance adopted subsequent to a party's investment in real property, which at the time of purchase is free of restrictions, is not per se invalid. *See Talbot v. Myrtle Beach Bd. of Adjustment,* 222 S.C. 165, 172, 72 S.E.2d 66, 69 (1952). That is, the mere *contemplated* use of property by a landowner on the date a zoning ordinance becomes effective precluding such use is not protected as a

nonconforming use. *Daniels v. City of Goose Creek*, 314 S.C. 494, 497, 431 S.E.2d 256, 258 (Ct.App.1993) (emphasis added).

In *DeStefano v. City of Charleston*, our supreme court found, under similar facts, that a property owner who held his land for investment and who "made only those kind of preliminary improvements to the land which serve to give him flexibility to resell [the lots]" did not have a vested right to the original zoning classification of the property. 304 S.C. 250, 254, 403 S.E.2d 648, 651 (1991). DeStefano's actual development planning consisted of the installation of the utilities, developing the layout of the road, and trying to file various final plats in conformance with the then existing zoning classification. However, DeStefano never commenced to construct buildings on the property; instead, the court found that what was ultimately constructed on the lots was to be solely determined by those persons and entities to whom DeStefano eventually sold the property. *Id.* at 255, 403 S.E.2d at 651.

Like DeStefano, LFP had no building plans, specifications, or particular development scheme which would be binding on any of its purchasers or prospective purchasers. The fact that LFP expended money to build the infrastructure of the property, including constructing roads, and installing water, sewer and a drainage system on the property, was not enough to commit the property to multi-family use. *See DeStefano*, 304 S.C. at 255, 403 S.E.2d at 651.

The general rule is that "a taking involves the actual interference with, or the disturbance of, property rights, resulting in injuries which are not merely consequential or incidental." *Brabham v. City of Sumter*, 275 S.C. 597, 598, 274 S.E.2d 297, 297 (1981). As LFP's interest in the subject property was merely as an investment, no vested right attached to the original zoning of the property; therefore, there was no taking of LFP's property.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is **AFFIRMED.**

CURETON, GOOLSBY and STILWELL, JJ., concur.