**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Dewberry 334 Meeting Street, LLC, Respondent,

v.

City of Charleston and Board of Zoning Appeals-Zoning, Appellants.

Appellate Case No. 2018-000378

---

Appeal From Charleston County
J. C. Nicholson, Jr., Circuit Court Judge

---

Unpublished Opinion No. 2021-UP-360
Heard September 15, 2020 – Filed October 20, 2021

---

**REVERSED**

---

Frances Isaac Cantwell and Daniel Simmons McQueeney, Jr., both of Charleston, for Appellants.

John Phillips Linton, Jr. and George Trenholm Walker, both of Walker Gressette Freeman & Linton, LLC, of Charleston, for Respondent.

---

**PER CURIAM:**  The City of Charleston (City) and Board of Zoning Appeals-Zoning (BZA) (collectively, Appellants) appeal the order of the circuit court vacating the BZA's decision and declaring Dewberry 334 Meeting Street, LLC

(Dewberry) has the legal right to certain accessory uses on the eighth floor of its hotel.  We reverse.

1.  We agree with Appellants' argument that the circuit court erred in holding the City's zoning ordinances did not prohibit Dewberry from adding new accessory uses to the hotel building without first obtaining BZA approval.

"Issues involving the construction of ordinances are reviewed as a matter of law under a broader standard of review than is applied in reviewing issues of fact." *Mitchell v. City of Greenville*, 411 S.C. 632, 634, 770 S.E.2d 391, 392 (2015). "The cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intent whenever possible." *Id.* "When interpreting an ordinance, legislative intent must prevail if it can be reasonably discovered in the language used." *Id.* "An ordinance must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers." *Id.* "The statutory language must be construed in light of the intended purpose of the statute." *Florence Cnty. Democratic Party v. Florence Cnty. Republican Party*, 398 S.C. 124, 128, 727 S.E.2d 418, 420 (2012).  The appellate court "will not construe a statute in a way which leads to an absurd result or renders it meaningless." *Id.* "[I]t is well-settled that statutes dealing with the same subject matter are *in pari materia* and must be construed together, if possible, to produce a single, harmonious result." *Beaufort County v. S.C. State Election Comm'n*, 395 S.C. 366, 371, 718 S.E.2d 432, 435 (2011). "[W]here two provisions deal with the same issue, one in a general and the other in a more specific and definite manner, the more specific prevails." *Mikell v. County of Charleston*, 386 S.C. 153, 160, 687 S.E.2d 326, 330 (2009).

According to section 54-220 of the City of Charleston Code of Ordinances (2016),[1] accommodation uses were only allowed in the A Overlay Zone[2] and only with approval of the BZA.  The ordinance explained the intent of the City as follows: "The City places a high value on the preservation of the character of its residential neighborhoods.  Potential negative impacts affecting residential neighborhoods shall be avoided or minimized to the greatest extent possible."  Section 54-220 required an applicant to provide site plans, floor plans, building elevations, and a detailed written assessment report to the BZA for its consideration.  This information must have included "the proximity of residential neighborhoods to the

---

[1] The City of Charleston has revised these ordinances since this matter arose.  We refer to the ordinances as they appear in the record on appeal.

[2] The ordinance permits some exceptions not relevant to this case.

facility" and "the accessory uses proposed for the facility in terms of the size, impact on parking, and impact on traffic generation[.]" In addition, section 54-925 of the City of Charleston Code of Ordinances (2016) provided, "In granting an exception or a variance, the [BZA] may attach to it such conditions regarding the location, character or other features of the proposed building, structure, or use as the [BZA] may consider advisable to protect established property values in the surrounding area, or to promote the public health, safety, or general welfare."

The zoning ordinances clearly authorized the BZA to consider all of the plans for a hotel, including all of the accessory uses. In addition, the ordinances authorized the BZA to place conditions on accessory uses. This authorization would have been meaningless if a hotel could add or change accessory uses without seeking BZA approval for such alterations. Under the circuit court's interpretation of the ordinances, a hotel, such as Dewberry, could submit plans for a special exception that did not include any objectionable accessory uses and then, after receiving BZA approval, include in the construction a use the BZA would not have approved. We find such an interpretation does not comport with the intent of the zoning ordinance, which had the stated goal of preserving the character of the City's residential neighborhoods and sought to avoid or minimize potential negative impacts affecting residential neighborhoods to the greatest extent possible.

We find the circuit court erred in holding that a property owner was entitled to all accessory uses that accompanied a principal use. The circuit court relied on section 54-203 of the City of Charleston Code of Ordinances (2016), which addressed permitted principal uses and provided, "Accessory uses, which for the purposes of this Chapter are defined as uses of land or of a building or portion thereof which are customarily incidental and subordinate to a principal use located on the same lot or parcel, are allowed . . . ." This definition was in the general ordinance concerning permitted principal uses. The more specific ordinances concerning special exceptions for accommodation uses and granting the BZA authority over accessory uses prevail over this general definition. *See Mikell*, 386 S.C. at 160, 687 S.E.2d at 330 (stating "where two provisions deal with the same issue, one in a general and the other in a more specific and definite manner, the more specific prevails").

We agree with Appellants' argument that the circuit court erred in interpreting the 2011 special exception permit and conditions contained therein as tacit permission for Dewberry to add new accessory uses to the eighth floor and rooftop. The circuit court stated, "If the BZA desired to condition its accommodations use for this location at 334 Meeting Street on the prohibition of uses like a function,

reading room, pantry or small bar/restaurant inside the eighth floor, then it could have crafted such a condition as part of its approval." As stated above, the zoning ordinance charged the BZA with the authority to review site plans, floor plans, building elevations, and a detailed written assessment report. This information must include "the accessory uses proposed for the facility in terms of the size, impact on parking, and impact on traffic generation." The BZA evaluated an application based on the detailed information the applicant provided to it. It was not charged with anticipating any and all possible accessory uses and prohibiting uses it was not asked to consider.

While the circuit court correctly found that a hotel would not be irrevocably bound by the conceptual floor plans presented to the BZA, Appellants never advocated such an inflexible position. Appellants explain in their brief to this court that although "the Zoning Administrator referred to the approved uses shown on the floor plans as being 'set in stone,' . . . this comment was qualified several times with explanations that changes would be locked in unless Dewberry received an amended special exception for the completely new accessory uses." The BZA's approval of a rooftop pool did not require Dewberry to complete an unfeasible project. However, before Dewberry could construct alternative accessory uses, it was required to submit its revised plans to the BZA to allow the BZA the opportunity to exercise its authority as granted in the ordinances. We find Appellants' interpretation reasonable. *See Mitchell*, 411 S.C. at 634, 770 S.E.2d at 392 ("An ordinance must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers.")

We therefore hold the circuit court erred in finding the zoning ordinances did not require Dewberry to submit a new application to the BZA upon its revision of its plans for the eighth floor and rooftop.

2. Appellants argue the circuit court erred in holding the BZA's decision to deny Dewberry an amendment to the 2011 special exception was arbitrary and capricious. We agree.

"On appeal, the findings of fact by the [Zoning] Board shall be treated in the same manner as a finding of fact by a jury, and the court may not take additional evidence." *Helicopter Sols., Inc. v. Hinde*, 414 S.C. 1, 8-9, 776 S.E.2d 753, 757 (Ct. App. 2015) (alteration in original) (quoting *Wyndham Enters., LLC v. City of North Augusta*, 401 S.C. 144, 147, 735 S.E.2d 659, 661 (Ct. App. 2012)); *see* S.C. Code Ann. § 6-29-840(A) (Supp. 2020) ("The findings of fact by the board of appeals must be treated in the same manner as a finding of fact by a jury, and the

court may not take additional evidence."). "In reviewing the questions presented by the appeal, the court shall determine only whether the decision of the [Zoning] Board is correct as a matter of law." *Helicopter Sols., Inc.*, 414 S.C. at 9, 776 S.E.2d at 757 (alteration in original) (quoting *Wyndham Enters.*, 401 S.C. at 147-48, 735 S.E.2d at 661). "However, a decision of a municipal [Z]oning Board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Id.* (alteration in original) (quoting *Wyndham Enters.*, 401 S.C. at 148, 735 S.E.2d at 661). "An abuse of discretion occurs when a trial court's decision is unsupported by the evidence or controlled by an error of law." *Newton v. Zoning Bd. of Appeals for Beaufort Cnty.*, 396 S.C. 112, 116, 719 S.E.2d 282, 284 (Ct. App. 2011) (quoting *County of Richland v. Simpkins*, 348 S.C. 664, 668, 560 S.E.2d 902, 904 (Ct. App. 2002)).

"The appellate court gives 'great deference to the decisions of those charged with interpreting and applying local zoning ordinances.'" *Arkay, LLC v. City of Charleston*, 418 S.C. 86, 91, 791 S.E.2d 305, 308 (Ct. App. 2016) (quoting *Gurganious v. City of Beaufort*, 317 S.C. 481, 487, 454 S.E.2d 912, 916 (Ct. App. 1995)). "A court will refrain from substituting its judgment for that of the reviewing body, even if it disagrees with the decision." *Furr v. Horry Cnty. Zoning Bd. of Appeals*, 411 S.C. 178, 184, 767 S.E.2d 221, 224 (Ct. App. 2014) (quoting *Clear Channel Outdoor v. City of Myrtle Beach*, 372 S.C. 230, 234, 642 S.E.2d 565, 567 (2007)). "The party challenging a governmental body's decision bears the burden of proving the decision is arbitrary." *Pressley v. Lancaster County*, 343 S.C. 696, 704, 542 S.E.2d 366, 370 (Ct. App. 2001).

Dewberry asserts the City's concerns about noise emanating from the eighth floor are unfounded because the thickness of the glass on the exterior of the building would prevent any noise from being heard from the outside. Although Dewberry contends the Citrus Club is not a rooftop bar, it admitted in its brief that "guests visiting the interior accessory uses are free to go on the terrace, and, to that extent, their presence on the terrace might be considered an extension of the uses on the interior or facilitated by the accessory uses[.]" Dewberry also claims the Citrus Club would continue Dewberry's theme of elegance and would not be a rowdy place "like a biker bar." However, one of the neighborhood residents who opposed Dewberry's application for an amendment of the special exception testified at the BZA hearing Dewberry had already been ticketed twice due to noise generated

from activities on the first floor.[3]  Another resident related his observation of the sound intensity at street level emanating from another rooftop bar.  Although Dewberry portrays the uses of the Citrus Club and function rooms as small and intimate, one neighborhood resident testified he had been invited to a large party, which was attended by 200 to 250 people, and had been planned to be held on the rooftop before the City closed the eighth floor.

We find a letter from the designer of the sound system for the hotel asserting the music would not be heard from street level does not contradict the concerns about noise.  The concern was not only about the volume of music but also the sounds of conversations emanating from large groups on the rooftop. We also reject Dewberry's assertion that the City's noise ordinance would alleviate any concerns about noise.  This ordinance did not stop Dewberry from being cited in livability court for parties on the first floor.

Dewberry contends the conditions the BZA set forth in the 2011 special exception would serve to alleviate any of the issues raised by the City.  However, the accessory uses shown in the 2011 application—the spa/fitness area and pool—would have been used by patrons of the hotel.  Under Dewberry's current plans, the general public can use the Citrus Club and the events held in the function rooms are not limited to hotel patrons.  As a representative of the Historic Charleston Foundation testified at the BZA hearing, "There's a large difference [between] paying guests of a hotel[] getting drinks via room service [or] a bar and having a publically open bar on the rooftop."  In addition, Dewberry did not simply move accessory uses approved in the 2011 special exception to the eighth floor from other locations in the hotel.  The hotel still has a ballroom and restaurant operating on the first floor.  The proposed uses for the eighth floor would draw additional people to the hotel.  Dewberry, however, failed to provide the BZA with information about the "impact on parking[] and impact on traffic generation" as required by the zoning ordinance.

We find the neighborhood residents expressed valid concerns.  One testified about his own experiences hearing noise from rooftop bars and another related being invited to a large party that was to have been held on the rooftop.  The residents testified about how Dewberry broke their trust by gaining their approval with the 2011 plans and then changing those plans to include a bar, which had been their

[3] Dewberry explained the violations were due to its misunderstanding that the restriction prohibiting outdoor amplified music applied just to the roof while in fact it applied to the entire hotel.

biggest concern during the original application time. Thus, not all of the testimony presented by the residents was speculative as the trial court held. Furthermore, unlike as in *Wyndham Enterprises* upon which the trial court relied, the record does not contain any direct evidence contradicting the residents' concerns. *See Wyndham Enters.*, 401 S.C. at 149-50, 735 S.E.2d at 662 (explaining city staff determined the proposed use would not generate a significant amount of traffic, which contradicted the residents' speculative concerns about increased traffic).

Dewberry bore the burden of showing that the new uses of the eighth floor and rooftop would avoid or minimize potential negative impacts on the neighborhood. We hold the record contains evidence to support the BZA's decision that Dewberry failed to meet this burden.

3. Appellants argue the circuit court erred in reversing the BZA's decision to deny Dewberry an amended special exception based on the doctrine of governmental estoppel. We agree.

As the defense of estoppel is equitable in nature, "[i]n reviewing the trial court's decision, this court may make findings of fact according to its own view of the preponderance of the evidence." *Moates v. Bobb*, 322 S.C. 172, 175, 470 S.E.2d 402, 403 (Ct. App. 1996). As a general rule, estoppel does not lie against the government to prevent the due exercise of its police power or to thwart the application of public policy. *Grant v. City of Folly Beach*, 346 S.C. 74, 80, 551 S.E.2d 229, 232 (2001). "No estoppel can grow out of dealings with public officers of limited authority, and the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs because of an error or mistake of . . . one of its officers or agents." *Quail Hill, LLC v. County of Richland*, 387 S.C. 223, 236, 692 S.E.2d 499, 506 (2010) (omission in original) (quoting *DeStefano v. City of Charleston*, 304 S.C. 250, 257-58, 403 S.E.2d 648, 653 (1991)). "A governmental body is not immune from the application of the doctrine of estoppel *where its officers or agents act within the proper scope of their authority*." *Id.* (quoting *DeStefano*, 304 S.C. at 258, 403 S.E.2d at 653). "*The public cannot be estopped, however, by the unauthorized or erroneous conduct **or** statements of its officers or agents which have been relied on by a third party to his detriment*." *Id.* (quoting *DeStefano*, 304 S.C. at 258, 403 S.E.2d at 653). In addition, "administrative officers of the state cannot estop the state through mistaken statements of law." *Id.* (quoting *Greenville County v. Kenwood Enters., Inc.*, 353 S.C. 157, 172, 577 S.E.2d 428, 436 (2003), *overruled on other grounds by Byrd v. City of Hartsville*, 365 S.C. 650, 620 S.E.2d 76 (2005)). "Specifically, '[e]stoppel will not lie against a government entity where a

government employee gives erroneous information in contradiction of statute. Simply stated, equity follows the law.'" *Id.* (alteration in original) (quoting *Morgan v. S.C. Budget & Control Bd.*, 377 S.C. 313, 319, 659 S.E.2d 263, 267 (Ct. App. 2008)).

In order for estoppel to be applicable against a government agency, the asserting party must prove "(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question, (2) justifiable reliance upon the government's conduct, and (3) a prejudicial change in position." *Id.* at 236-37, 692 S.E.2d at 506; *see Grant v. City of Folly Beach*, 346 S.C. 74, 82, 551 S.E.2d 229, 233 (2001) (holding the city was not estopped from excluding the residential use of a unit because even if the property owner had been misled by the permit's reference to an "apartment," he could have reviewed the zoning/flood ordinance to ascertain the limitations on his building).

Section 54-901 of the City of Charleston Code of Ordinances (2016) provided,

> The duty to administer and to enforce the provisions of this Chapter is hereby conferred upon the zoning administrator, herein referred to as the administrative officer of the Zoning Ordinance. The city building inspector shall inspect all construction or alteration for which permits are issued by the city engineer or as authorized by the Board of Zoning Appeals or as authorized by the Board of Architectural Review, as hereinafter provided, and shall make a weekly report in writing to the city engineer's office, listing all construction inspected and specifying any work observed by him which is not in accordance with permits issued, or which violates this chapter or any other ordinance of the city.

While this ordinance charges the building inspector with reporting to the city engineer's office any work not in accordance with permits or in violation of ordinances, it does not authorize the inspector to waive any zoning ordinance requirements. The building inspector has limited authority. There is no evidence in the record the building inspector told Dewberry it did not have to submit an amended application to the BZA. The inspector simply never stopped construction. Furthermore, as stated above, the City's ordinances clearly require applicants to submit all plans to the BZA and authorize the BZA to evaluate all

accessory uses.  Dewberry was required by the ordinances to submit an application for an amendment.

We find Dewberry knew or should have known from the ordinances that it was required to submit an application for an amendment to the 2011 special exception. It could not rely on the building division's approval of its plans or on the building inspector's failure to stop the construction to justify its decision to proceed with the construction without first submitting the application to the BZA.

For the above stated reasons, the order of the circuit court vacating the BZA's decision and declaring Dewberry has the legal right to continue the accessory uses on the eighth floor is

**REVERSED.**

**HUFF, WILLIAMS, and GEATHERS, JJ., concur.**