767 S.E.2d 221

**Fayrell FURR and Karole Jensen, Respondents,**

v.

**HORRY COUNTY ZONING BOARD OF APPEALS, Appellant.**

Appellate Case No. 2013–001188.

No. 5284.

Court of Appeals of South Carolina.

Heard Nov. 3, 2014.

Decided Dec. 17, 2014.

Rehearing Denied Jan. 23, 2015.

Emma Ruth Brittain, of Thomas & Brittain, P.A., of Myrtle Beach, for Appellant.

Gene McCain Connell, Jr., of Kelaher Connell & Connor, PC, of Surfside Beach, for Respondents.

KONDUROS, J.

The Horry County Zoning Board of Appeals (the Board) appeals the circuit court's order reversing the Board's decision finding a Mercy Care Hospice (MCH) facility could be built within the proposed area zoned Commercial Forest Agricultural (CFA). We reverse.

## FACTS/PROCEDURAL BACKGROUND

MCH proposed to build a fourteen-bed hospice facility on twenty-two acres of land it owns in Horry County. The property is located immediately adjacent to a subdivision, Wildhorse, and closest to the home shared by Fayrell Furr and his wife, Karole Jensen (collectively Respondents). The area is zoned CFA. The MCH property has no direct access from the closest main road, Highway 90, necessitating that the entrance to the MCH facility be immediately inside the entrance to the subdivision.

The current zoning ordinances do not specifically permit or prohibit a hospice. However, after reviewing the matter, the Horry County Zoning Administrator determined a hospice would be a permitted use in the CFA zone as either group housing[1] or a nursing home.[2] Respondents appealed that decision to the Board.

At the appellate hearing before the Board, opponents of the MCH facility expressed concern over increased traffic in the area, and Jensen presented newspaper articles discussing

---

**1.** The Horry County Code of Ordinances defines a Permanent Overnight Resident Group Care Home as "[a] facility or dwelling unit housing persons unrelated by blood or marriage and operating as a group family household. A Group Care Home may include half-way houses; recovery homes; and homes for orphans, foster children, the elderly, battered children and women. It could also include a specialized treatment facility providing less than primary health care." Horry County, S.C., Ordinance 436.1.

**2.** A Nursing Home is defined as "[a]n extended or intermediate care facility licensed or approved to provide full-time convalescent or chronic care to individuals who, by reason of advanced age, chronic illness or infirmity, are unable to care for themselves." Horry County, S.C., Ordinance 447.1

Highway 90 as a dangerous road. Concerns over possible ambulance activity and helicopter transport were raised, as well as concerns over the environmental impact the facility may have. Furr argued a hospice is a hospital, a use prohibited in the CFA zone. He cited to section 44–7–130(12) of the South Carolina Code (2002), which defines "hospital" as

a facility organized and administered to provide overnight medical or surgical care or nursing care of illness, injury, or infirmity and may provide obstetrical care, and in which all diagnoses, treatment, or care is administered by or under the direction of persons currently licensed to practice medicine, surgery, or osteopathy.

He further cited to subsections 44–71–20(3) and (4) of the South Carolina Code (2002), which define "hospice" and "hospice facility." The subsections provide:

(3) "Hospice" means a centrally administered, interdisciplinary healthcare program. This program must provide a continuum of medically supervised palliative and supportive care for the terminally ill patient and the family including, but not limited to, outpatient and inpatient services provided directly or through written agreement. Inpatient services include, but are not limited to, services provided by a hospice in a licensed hospice facility.

. . . .

(4) "Hospice facility" means an institution, place, or building in which a licensed hospice provides room, board, and appropriate hospice services on a twenty-four-hour basis to individuals requiring hospice care pursuant to the orders of a physician.

*Id.*

Proponents of the MCH facility argued it would not constitute a hospital based on the types of activities that would take place there. Sara Jo Faucher, director of MCH, presented an affidavit from David Levitt, a healthcare consultant, who opined the MCH facility would not be a hospital. Levitt noted hospitals offer a much more intensive level of care, requiring significantly more resources, space, and personnel, and provide sophisticated diagnostic and surgical services, as well as emergency services. Faucher also presented a letter from J.T. Pegram, president of Pegram Associates, Inc., who was

assisting with the MCH facility design, indicating the facility would be "essentially a nursing home that specializes in caring for the terminally ill." Additionally, Pegram indicated the design would be LEED (Leadership in Energy and Environmental Design) certified. Faucher also provided an anticipated traffic study indicating the MCH facility would generate thirty-four additional trips per day by vehicles into Wildhorse as opposed to the property being used for residential development, which could produce 230 additional trips per day. Faucher indicated the MCH facility would not receive helicopter delivery of patients and any ambulance activity would be conducted without sirens.

Dr. Preston Strosnider, medical director of Conway Hospital and MCH board member, testified the MCH facility would be more akin to a nursing home and would not constitute a hospital. He testified nurses and certified nursing assistants would be on staff and doctors could make rounds but not on a daily basis. Dr. Strosnider indicated a physician would be available at all times just as a physician treating a hospice patient in the patient's home would be available if needed.

The Board upheld the Zoning Administrator's decision that the MCH facility would fall within the ordinances permitting group housing or nursing homes in a CFA zone and rejected the argument the MCH facility constituted a hospital. Respondents appealed the Board's decision to the circuit court.

The circuit court reversed the decision of the Board, concluding the Board's interpretation of the zoning ordinances was incorrect as a matter of law. The circuit court indicated "the level of care, including the provision of primary medical care if needed, required in a hospice facility is greater than that of both permanent overnight resident group care homes and nursing homes." The circuit court also concluded a hospice is like a hospital because only a hospice and a hospital require physicians to supervise the care and treatment of the patients and only a hospice and hospital require a physician's order for admission.[3] Finally, the circuit court found the

---

3. Regulation 61–78.504(A),(B), and (C) of the South Carolina Code (2012) indicate a physician shall supervise the care and treatment of the patient while receiving hospice treatment/care/services, nursing care services shall be supervised by a staff registered nurse, and minimum

proposed location was not suitable for the MCH facility because of its proximity to Wildhorse. The Board's appeal followed.

## LAW/ANALYSIS

The Board contends its determination that a hospice is a permissible use in a CFA zone is a determination that should be accorded deference by the circuit court. Respondents argue the Board's decision involved its interpretation of the Horry County zoning ordinances and, therefore, constitutes a question of law which the circuit court properly reversed. We find the Board's position to be persuasive.

The Supreme Court of South Carolina has summarized the standard of review in zoning appeals as follows:

It is a well settled proposition of zoning law that a court will not substitute its judgment for the judgment of the board. The court may not feel that the decision of the board was the best that could have been rendered under the circumstances. It may thoroughly disagree with the reasoning by which the board reached its decision. It may feel that the decision of the board was a substandard piece of logic and thinking. None the less, the court will not set aside the board's view of the matter just to inject its own ideas into the picture of things.

*Rest. Row Assocs. v. Horry Cnty.*, 335 S.C. 209, 216, 516 S.E.2d 442, 446 (1999) (quotation marks omitted).

 "By statute, the trial court must uphold a decision by the Planning Commission unless there is no evidence to support it. This [c]ourt will uphold the trial [court]'s decision unless it was based on an error of law or is not supported by the evidence." *Town of Hollywood v. Floyd*, 403 S.C. 466, 476, 744 S.E.2d 161, 166 (2013) (citation omitted). *See*

---

staffing of a hospice facility shall consist of one registered nurse and one additional direct care staff member on duty at all times.

Regulation 61–17 § 605 of the South Carolina Code (2011) states a nursing home "facility shall have a medical director who is a physician who shall be responsible for implementation of policies and procedures that pertain to the care and treatment of the residents and the coordination of medical care in the facility." Regulation 61–17 § 606(A)(1) and (3) of the South Carolina Code (2011) further provide a registered nurse shall serve as full-time director of nursing, and at least one registered nurse shall be in the facility or on call.

S.C.Code Ann. § 6–29–840(A) (Supp.2013) ("The findings of fact by the [zoning] board of appeals must be treated in the same manner as a finding of fact by the jury. . . ."). "In reviewing questions presented on appeal, the court must determine only whether the decision of the board is correct as a matter of law." *Clear Channel Outdoor v. City of Myrtle Beach,* 372 S.C. 230, 234, 642 S.E.2d 565, 567 (2007). "A court will refrain from substituting its judgment for that of the reviewing body, even if it disagrees with the decision." *Id.* A zoning board's decision will be overturned if it is "arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Id.* The decisions of those charged with interpreting and applying zoning ordinances "should be given some consideration and not overruled without cogent reason therefore." *Id.* at 236, 642 S.E.2d at 568 (internal quotation marks omitted).

In *Heilker v. Zoning Board of Appeals for the City of Beaufort,* 346 S.C. 401, 552 S.E.2d 42 (Ct.App.2001), Heilker argued having sidewalk sales at his furniture store was a nonconforming "use" that should be permitted to continue under new zoning ordinances. *Id.* at 403–04, 552 S.E.2d at 43–44. The Zoning Board determined the sidewalk sales were merely a "practice" attendant to Heilker's "use" of the premises as a furniture store. *Id.* at 405, 552 S.E.2d at 44. The circuit court reversed. *Id.* On review, the majority determined the inquiry of whether a proposed activity constituted "use" within the context of zoning was a question of fact and stated:

> In zoning matters, this [c]ourt is obligated to apply the extremely narrow standard of review outlined in *Vulcan Materials Co. v. Greenville County Bd. of Zoning Appeals,* 342 S.C. 480, 536 S.E.2d 892 (Ct.App.2000). The local zoning boards, and not the courts, are the primary entities responsible for the planning and development of our communities.
>
> A "use" in the zoning context is "the purpose or activity for which land or buildings are designed, arranged, or intended, or for which land or buildings are occupied or maintained." A determination by a zoning board that a particular purpose or activity does or does not constitute a "use" is a finding of fact.

In the case *sub judice*, we rule the [c]ircuit [c]ourt erred in supplanting the Zoning Board's finding of fact that Heilker's outdoor display of indoor merchandise was not a nonconforming "use."

*Id.* at 412, 552 S.E.2d at 48.

■ In this case, Horry County ordinances do not specifically permit or prohibit a hospice in a CFA zone. Therefore, the parties asked the Board to determine whether the MCH facility was more comparable to a nursing home or group housing, permitted uses, or a hospital, a prohibited use. That required a factual inquiry to discern the type of care, staffing, and activity that would be involved at the MCH facility along with consideration of the relevant ordinances. Based on that information and analysis, the Board determined the MCH facility fell within the permitted uses and approved construction in the CFA Zone. Consequently, we find the circuit court should have given deference to the Board's decision because its decision was based upon appropriate findings of fact which are supported by the record.

Levitt's affidavit opined hospitals offer a much more intensive level of care, requiring significantly more resources, space, and personnel, and provide sophisticated diagnostic and surgical services, as well as emergency services. Dr. Strosnider testified the MCH facility was more like a nursing home based on the type of care that would be provided and based on the type of staffing. Because evidence in the record supports the Board's conclusion, the circuit court's order is

**REVERSED.**

HUFF and SHORT, JJ., concur.