1609

F.B.R. INVESTORS, a South Carolina Partnership, Frederick W. Brown, Partner, and Regina Brown, Partner, Respondents v. COUNTY OF CHARLESTON, Appellant.

(402 S.E. (2d) 189)

Court of Appeals

*Nancy B. Tecklenburg,* Charleston, *for appellant.*

*John E. Romanosky, Jr.,* Charleston, *for respondents.*

Heard Dec. 11, 1990.

Decided Feb. 11, 1991.

CURETON, Judge:

This declaratory judgment action involves the rezoning of property on James Island in Charleston County. The trial judge held F.B.R. Investors had a vested right to complete the development of its property as a multi-family project and the County of Charleston was estopped to prohibit the development. The County appeals. We reverse.

F.B.R. Investors owns a fifteen acre tract of land on James Island. The tract consists of two adjoining parcels purchased separately in 1984 and 1985. The entire fifteen acre tract was

zoned RM-2, a multi-family classification. F.B.R. Investors planned a multi-family dwelling project on the property. Originally, the plan was for quadruplex units.

After obtaining preliminary approval from Charleston County to proceed with the quadruplex project, F.B.R. Investors decided to develop the property in two phases and to build duplexes instead of quadruplexes. Phase I consisted of approximately eight acres and contained twenty-five individual multi-family lots. F.B.R. Investors satisfied all Charleston County requirements for development of Phase I. At the time of trial in 1989, twenty-two duplex units had been completed in Phase I and three were nearing completion. Phase I is not in issue in this case. Preliminary approval remained in effect for development of Phase II as quadruplexes.[1]

In March, 1988, the Charleston County Council adopted the James Island Land Use Plan. The plan had been under consideration since 1986. The plan called for all undeveloped land along two lane roads on James Island to be zoned for single family use. Phase II of F.B.R. Investors property was directly affected by this proposal. Apparently, there was some disagreement in the city's planning staff and committees about the proposed downzoning of Phase II with at least one recommendation that the property remain zoned multi-family. However, Charleston County Council ultimately voted to downzone Phase II of the F.B.R. Investors property from multi-family to single-family.

F.B.R. Investors brought this suit claiming it had a vested right to complete its multi-family development in Phase II notwithstanding the rezoning. The trial court held in favor of F.B.R. Investors finding it had a vested right to continue Phase II. The court determined the partnership had completed development of fifty-five percent of the fifteen acre tract. Although building permits had not been obtained for any of the proposed duplexes in Phase II, the court concluded F.B.R. Investors had made substantial expenditures for the entire development and as such had obtained the vested right to complete the project.

As previously noted, Phase I is not in issue. The record re-

---

[1] Final approval for the quadruplex project required F.B.R. to meet seventeen contingencies which included compliance with Charleston County Zoning Ordinances.

veals all substantial expenses incurred by F.B.R. Investors, other than property acquisition costs, have been for Phase I. These expenses included contracts for the water system, construction of drainage and sewer lines, and construction of the duplex units. There are no buildings or paved roads in Phase II. No building permits have been issued.

A landowner acquires a vested right to continue a nonconforming use already in existence at the time his property is zoned in the absence of a showing that the continuance of the use would constitute a detriment to the public health, safety, or welfare. However, a contemplated use of property by a landowner on the date a zoning ordinance becomes effective precluding such use is not protected as a nonconforming use. *Friarsgate, Inc. v. Town of Irmo*, 290 S.C. 266, 349 S.E. (2d) 891 (Ct. App. 1986); R. Anderson, *American Law of Zoning* (3d) Section 6.23 (1986).

We disagree with the trial court's conclusion that F.B.R. Investors had established a vested right to complete Phase II as a multi-family project. Although F.B.R. could have developed the entire tract as one project, it chose to divide it into two projects. The efforts of F.B.R. Investors were directed toward completion of Phase I. Phase II was essentially barren land when the zoning change occurred.[2]

We find the case presented here most analogous to the facts of the *Friarsgate* case. Many of the expenses incurred by F.B.R. Investors were similar to the costs incurred by the Friarsgate developer. Further, no construction had begun in Phase II which was analogous to the lack of construction in *Friarsgate*. Similarly, building permits were not obtained for Phase II as was also the situation in *Friarsgate*.

The trial court also held Charleston County was estopped from prohibiting the development of Phase II. The court primarily relied upon certain recommendations of various planning boards and committees made regarding Phase II. It appears that at points during the rezoning process there were recommendations that Phase II not be downzoned to single family use. However, Charleston County Council had the final

---

[2] An official for F.B.R. testified that the only thing done to Phase II was to excavate for a road and sewage line. Such actions would not amount to an appropriation of Phase II for multi-family purposes.

decision and did not agree with these recommendations. County Council was not bound to follow the recommendation of its planning boards and committees. Further, F.B.R. Investors did not rely upon these recommendations by incurring expenses directly related to Phase II. This situation is not analogous to the case of *Abbeville Arms v. City of Abbeville*, 273 S.C. 491, 257 S.E. (2d) 716 (1979). In that case, the developer relied upon an official zoning map and a letter from the city zoning administrator concerning the zoning in making expenditures of approximately $100,000. The supreme court held the city was estopped from denying a building permit in that situation.

All other issues raised in this appeal are manifestly without merit and we dispose of them under *S.C. Code Ann.* Section 14-8-250 (Supp. 1990).

Reversed.

SHAW and BELL, JJ., concur.

