**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Harrison Partners, LLC, Appellant,

v.

Renewable Water Resources, Respondent.

Appellate Case No. 2013-000329

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

Unpublished Opinion No. 2015-UP-527
Heard September 15, 2015 – Filed November 18, 2015

**AFFIRMED**

Robert Clyde Childs, III, of Childs Law Firm, and J. Falkner Wilkes, both of Greenville, for Appellant.

Rivers Samuel Stilwell and Lane Whittaker Davis, both of Nelson Mullins Riley & Scarborough, LLP, of Greenville, for Respondent.

**PER CURIAM:**  Harrison Partners, LLC (Harrison) appeals the circuit court's order affirming the decision of the administrative hearing officer, arguing (1) the hearing officer made numerous factual findings that were unsupported by the evidence, (2) the circuit court erred in finding Harrison caused delays in the project

and never completed its application for a flow acceptance permit, (3) the circuit court erred in finding Harrison had no vested right in receiving sewer service on the subject project, (4) the hearing officer erred in failing to rule on the contracts clause issue, and (5) the circuit court erred in finding additional sustaining grounds existed to support the decision of the hearing officer. We affirm.

## FACTS

Renewable Water Resources (ReWa) is a special purpose district formerly known as Western Carolina Regional Sewer Authority. Harrison is a developer that in early 2006, sought to develop the River Trace subdivision. Part of this process included obtaining the necessary sewer approvals and permits from ReWa. The location of River Trace in relation to the nearest sewage treatment plant necessitated the construction of a sewage pump station. Harrison's plan was to contract with Condor Environmental, LLC (Condor), a private sewer utility approved by the Public Service Commission. River Trace's collector system was to be operated by Metropolitan Sewer Subdistrict (Metro), a public entity that would run sewage to Condor's pump station, which would then pump it to ReWa's treatment plant. The plan required the running of a sewer line across ReWa's property near the treatment plant and connecting that line directly into a ReWa line. Over the course of the project, at least three routes were proposed for placement of the sewer line: (1) the flag lot route, (2) the road route or "Bishop" proposal, and (3) the river route.

In November 2007, ReWa's board of commissioners proposed a change to ReWa's regulations (the new regulation) that adversely affected the ability of a private utility, like Condor, to jointly own part of a sewer line with a public entity, like Metro. After at least two public hearings, the new regulation was enacted on May 5, 2008.

Harrison failed to submit the required documents to obtain the flow acceptance permit prior to May 5, 2008, and never received grandfathered status. Harrison filed its initial complaint in the circuit court against multiple defendants, including ReWa, in September 2009. The complaint asserted several causes of action and also requested a declaratory judgment and writ of mandamus. Harrison's general argument in the complaint and before the lower courts was that ReWa never indicated there was a problem with Condor's operation of the pump station, and ReWa intentionally delayed the project by at least three years. Harrison contended that during the delay, ReWa changed its regulations so that only ReWa could run and own the sewer system, and ReWa began effectively enforcing the new

regulation before it was enacted.  Harrison also claimed it spent millions of dollars on the project by the time the regulation changed but its requests to be grandfathered under the old policy were ignored.  In March 2010, the circuit court dismissed Harrison's claims against ReWa without prejudice because Harrison failed to exhaust its mandatory administrative remedies prior to seeking judicial review.  Specifically, the court noted ReWa's regulations provided that any party whose permit was denied had the right to request an adjudicatory hearing.  Subsequently, in March 2011, hearing officer Michael Glenn presided over an administrative hearing on the case.

The hearing officer issued his decision in September 2011.  First, the hearing officer found Harrison's contention that ReWa caused unnecessary delays was unsupported by the evidence.  The officer found Harrison learned of the requirements to receive approval of its project on March 16, 2006, but never submitted the necessary (and specifically requested) information.  Second, the hearing officer found Harrison offered no evidence contesting the validity of the regulation or its constitutionality.  The decision stated ReWa followed a reasonable and rational approach to amend the sewer regulations.  As to Harrison's contention that it should have been grandfathered into the old sewer regulations, the officer found Harrison failed to complete its flow acceptance permit application before the regulations were amended.  The decision stated, "Without a complete application and finalized plans, ReWa's Commission had nothing before it to confer grandfathered status and [Harrison] had no vested rights."  After an appeal to the circuit court, the circuit court affirmed the hearing officer's decision.

## STANDARD OF REVIEW

"The [appellate] court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact.  The court may affirm the decision of the agency or remand the case for further proceedings.  The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record . . . ."[1]  S.C. Code Ann. § 1-23-380(5)

---

[1] A provision of ReWa's Sewer Use Regulation provides, "Any party aggrieved by a final decision of ReWa, other than in an enforcement case, may appeal such decision to the Court of Common Pleas in the county in which ReWa is located

(Supp. 2014). "Substantial evidence is 'evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the administrative agency reached.'" *Risher v. S.C. Dep't of Health & Envtl. Control*, 393 S.C. 198, 210, 712 S.E.2d 428, 434 (2011) (quoting *Se. Res. Recovery, Inc. v. S.C. Dep't of Health & Envtl. Control*, 358 S.C. 402, 407, 595 S.E.2d 468, 470 (2004)). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.*

## LAW/ANALYSIS

As to the vested rights issue, Harrison argues it completed the application process sufficiently to have a vested right to receive sewer service for its project. Harrison maintains ReWa gave no notice of the potential change in regulations and intentionally delayed Harrison's application until the regulations changed. Harrison also argues it is entitled to a permit because, after it learned of the proposed regulation change, it continued to rely on ReWa's representations that the parties would work something out or that Harrison would be grandfathered.

However, based upon our review of the record, we find substantial evidence exists to support the circuit court's affirmance of the hearing officer's finding that Harrison lacked vested rights. Specifically, we find Harrison's failure to submit the requested documents, including a confirmed route for the sewer line, necessary for obtaining a flow acceptance permit is fatal to Harrison's argument that it acquired a vested right to receive sewer service on the subject project. *See Friarsgate, Inc. v. Town of Irmo*, 290 S.C. 266, 272, 349 S.E.2d 891, 895 (Ct. App. 1986) (holding a developer's failure to obtain permits for all of its proposed buildings was fatal to its argument for a vested right even when it had begun construction on one building); *F.B.R. Inv'rs v. Cty. of Charleston*, 303 S.C. 524, 527, 402 S.E.2d 189, 191 (Ct. App. 1991) (declining to find a vested right existed to develop Phase II of a project when no construction had begun on Phase II and building permits were not obtained for Phase II).

Brian Bishop, ReWa's head engineer, testified that as of May 5, 2008—when the new regulation was enacted—Harrison had not submitted finalized engineering

---

under the same guidelines applied to State agencies which are set forth in S.C. Code Ann. § 1-23-380."

plans for the line it wanted to run across ReWa's property and had not submitted a required easement application. Additionally, Bishop testified he did not know whether Harrison had executed an agreement concerning maintenance and ownership of the force main, but he knew ReWa did not sign such an agreement. Notably, this agreement was specifically mentioned in a March 16, 2006, email to Harrison's engineer Scott Bolo, stating, "This agreement must be signed by all parties in order for the project to be approved." Accordingly, we believe substantial evidence supports both the circuit court and hearing officer's findings on this issue.

We find it is unnecessary to consider the remaining issues on appeal in light of our disposition of the vested rights issue. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when the disposition of a prior issue is dispositive).

**CONCLUSION**

Accordingly, the circuit court's order affirming the hearing officer's decision is

**AFFIRMED.**

**SHORT, GEATHERS, and MCDONALD, JJ., concur.**