MCDONALD, J.:
**60 In this consolidated appeal, Beaufort County and the United States of America (collectively, Appellants) argue the master-in-equity erred in reversing the Beaufort County Planning Commission's decisions requiring Grays Hill Baptist Church (the Church) to apply for a new development permit and denying the Church's subsequent application for the permit to construct a fellowship hall. Appellants contend the Church's 1997 development permit did not allow the Church to pursue additional development ten years later, and the County's 2006 ordinances addressing areas near the Beaufort Marine Corps Air Station proscribed approval of the Church's new development application. Appellants further argue the master erred in finding the Beaufort County Zoning Board of Appeals (the Zoning Board) erroneously denied the Church's request for a zoning variance. We reverse the decisions of the master and **61 reinstate the orders of the Planning Commission and Zoning Board.
Facts and Procedural History
On December 4, 1996, the Church applied for a development permit from Beaufort County. The application narrative detailed that "Phase I of the development will consist of a 15,872 [square foot] church with 25,250 [square feet] of asphalt and concrete paving. Phase II of the development will consist of an 11,250 [square foot] building shown on the enclosed plans as the building south of the church."
On January 7, 1997, the Beaufort County Zoning and Development Administration issued the Church a development permit, which indicated: "All permits expire two (2) years from the date of approval unless substantial improvement has occurred or final Subdivision plat has been recorded." On February 27, 1997, the Beaufort County Department of Inspections issued the Church a construction permit for a 15,280 square foot building. The proposed use for the construction was "assembly," with a construction cost of $632,800. The Beaufort County Development Division issued a certificate of compliance on December 17, 1997, after the work listed on the construction permit had been completed.
In 2006, the Beaufort County Council (County Council) enacted ordinances for an "Airport Overlay District" (the AO District), creating "accident potential zones" (APZ) and "noise zones" in areas surrounding Beaufort's Marine Corps Air Station (MCAS-Beaufort). Certain land uses and building expansions are restricted within the AO District. Although the AO District ordinances (the Ordinances) prohibited places of worship, they allowed "non-conforming places of assembly and worship [to] expand [ ] by up to *237 15% in accordance with Table 106-9[1] provided that the expansion does not increase the occupant load of the building."
In 2007, the Church applied for a permit to build its fellowship hall. The Church contends it applied for a construction permit, but the County required it to first obtain a development permit. On June 29, 2007, the County notified the **62 Church that the Beaufort County Development Review Team had reviewed the Church's application and determined it needed to seek a variance from the Zoning Board because the fellowship hall would increase the occupant load of the building and expand its area by more than fifteen percent, in violation of the AO District ordinance.
On October 10, 2007, the County notified the Church of the Review Team's staff recommendation to disapprove the project because the Church's proposed construction would increase the floor area by sixty percent. The Ordinances limit any increase to fifteen percent; further, such an increase must not "substantially increase the occupant load of the site." The Review Team subsequently disapproved construction of the fellowship hall, finding the Church's proposed construction did "not meet the intent of the [AO] District" because it would double the occupancy load.
The Church appealed the Review Team's decision to the Planning Commission. Following a hearing, the Planning Commission unanimously denied the Church's appeal.[2] The Church appealed the Planning Commission's decision to the circuit court pursuant to S.C. Code Section 6-29-820.[3]
At a hearing before the master-in-equity, the parties agreed "that it would be in the best interest of justice" for the master to hold the appeal in abeyance to allow the County to review a variance request from the Church. The Church later applied for a variance, stating, "The Church seeks the construction of a fellowship hall as originally permitted, which would be a larger than 15% expansion of the existing building size." The Church asserted the fellowship hall would not increase the occupant load for the site.
The Board denied the variance request, finding the request did not meet the criteria for a variance under the Beaufort **63 County Zoning and Development Standards Ordinance. The Church appealed the Zoning Board's decision; however, due to the lack of a record from the 2007 Planning Commission hearing, the master remanded the matter to the Commission for a de novo hearing on the question of whether the proposed fellowship hall would increase the Church's occupant load.
At the Planning Commission's December 5, 2011 hearing on the permit application, the Church explained it planned to build a fellowship hall as part of the 1997 development plan shown on the plat it submitted with the application for a development permit, but financial constraints delayed the construction of the hall. The Church claimed it contacted the County when it learned of the Ordinances, and the County informed the Church its development would not be impacted by the new restrictions. The Church further asserted the fellowship hall would not increase the occupant load because the fellowship hall and sanctuary would never be used at the same time.
The County argued the Church's 1997 permits did not cover the fellowship hall. It noted the narrative attached to the Church's application for the 1997 development permit divided the development into two phases. The County "closed out" the 1997 permit with a final inspection in December 1997 after it issued a certificate of compliance.[4] The County *238 further noted the Church was not entitled to a new development permit because the fellowship hall would increase the occupant load of the site, explaining, "[W]hat the [C]ounty is tasked with isn't what the practical application is going to be; it's what the potential is for increasing. They have to look at not what **64 representations are made because this building ... may not always belong to the [C]hurch."
The County emphasized that regardless of whether the construction of the fellowship hall exceeded fifteen percent of the disturbed area or build area, the fellowship hall would increase the occupant load of the site. Occupant load is based on the potential number of people that could be present on the site, not the number the Church believes would be there.
The Church stated the only evidence it had showing the County had assured it that the new ordinances would not affect its development was a letter from its pastor to the board of trustees describing his conversation with county officials. The County objected to the letter as hearsay.
By a vote of six to two, the Planning Commission found the Development Review Team did not err in reviewing the Church's application for a permit or in determining the requested development would increase the occupant load. The Planning Commission found the construction of the fellowship hall would significantly increase the potential occupancy load for the site and provided the Church with a letter of its written findings.
The master-in-equity reversed the decisions of the Planning Commission and the Zoning Board, holding the County erred in requiring the Church to obtain a new development permit. The master found the 1997 permit encompassed the fellowship hall; construction of the fellowship hall would not increase the occupant load; and the Planning Commission applied an incorrect expansion standard under the AO Ordinances. Finally, the master found the Zoning Board's denial of the Church's request for a variance was unsupported by the evidence.
After the County filed its Rule 59(e), SCRCP, motion to reconsider, the Church and the County asked the master to take the motion under advisement so the parties could continue negotiating in an attempt to resolve the matter. When the parties informed the master they could not reach an agreement, the master denied the County's motion to reconsider.
Standard of Review
"The appellate court gives 'great deference to the decisions of those charged with interpreting and applying local **65 zoning ordinances.' " Arkay, LLC v. City of Charleston , 418 S.C. 86, 91, 791 S.E.2d 305, 308 (Ct. App. 2016) (quoting Gurganious v. City of Beaufort , 317 S.C. 481, 487, 454 S.E.2d 912, 916 (Ct. App. 1995) ). "By statute, the trial court must uphold a decision by the Planning Commission unless there is no evidence to support it." Town of Hollywood v. Floyd , 403 S.C. 466, 476, 744 S.E.2d 161, 166 (2013) (citing S.C. Code Ann. § 6-29-840(A) (Supp. 2005)). "A court will refrain from substituting its judgment for that of the reviewing body, even if it disagrees with the decision." Furr v. Horry Cty. Zoning Bd. of Appeals , 411 S.C. 178, 184, 767 S.E.2d 221, 224 (Ct. App. 2014) (quoting Clear Channel Outdoor v. City of Myrtle Beach , 372 S.C. 230, 234, 642 S.E.2d 565, 567 (2007) ). "However, a decision of a municipal zoning board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." Austin v. Bd. of Zoning Appeals , 362 S.C. 29, 33, 606 S.E.2d 209, 211 (Ct. App. 2004) (quoting Rest. Row Assocs. v. Horry Cty. , 335 S.C. 209, 216, 516 S.E.2d 442, 446 (1999) ). *239 "On appeal, we apply the same standard of review as the [special] circuit court below: the findings of fact by the Board shall be treated in the same manner as findings of fact by a jury, and the court may not take additional evidence." Id.
Law and Analysis
I. Development Permit
A. Applicability of the 1997 Development Permit
Appellants argue the master-in-equity erred in finding the Church's 1997 development permit applied to the construction of a fellowship hall in 2007, because the permit had expired. We agree.
"A landowner acquires a vested right to continue a nonconforming use already in existence at the time his property is zoned in the absence of a showing that the continuance of the use would constitute a detriment to the public health, safety or welfare." Vulcan Materials Co. v. Greenville Cty. Bd. of Zoning Appeals , 342 S.C. 480, 498, 536 S.E.2d 892, 901 (Ct. App. 2000) (quoting F.B.R. Inv'rs v. Cty. of Charleston , 303 S.C. 524, 527, 402 S.E.2d 189, 191 (Ct. App. 1991) ). However, **66 "the mere contemplated use of property by a landowner on the date a zoning ordinance becomes effective precluding such use is not protected as a nonconforming use." Lake Frances Props. v. City of Charleston , 349 S.C. 118, 124-25, 561 S.E.2d 627, 631 (Ct. App. 2002).
In Friarsgate, Inc. v. Town of Irmo , a developer prepared to build a condominium project on property in Irmo, which had no zoning ordinances at the time the project was approved. 290 S.C. 266, 268, 349 S.E.2d 891, 892 (Ct. App. 1986). The developer implemented drainage, grading, landscaping, sewer, and water distributions; cleared a portion of the tract; obtained building permits for one building containing five units; and began constructing piers and foundations for the building. Id. at 268, 349 S.E.2d at 893. Thereafter, Irmo enacted zoning ordinances, which zoned the developer's property into a single family residential district. Id. The developer subsequently ceased construction and the building permits expired. Id. Upon learning Irmo would not issue new building permits for the project, the developer brought an action in circuit court; the circuit court found the developer had a vested right to complete the project. Id. However this court reversed and held that because "a building permit was required to construct each of the fourteen buildings in the project, the commencement of construction on one building did not constitute an appropriation of the entire tract to the project." Id. at 272, 349 S.E.2d at 895. The court noted the developer could have obtained building permits for the entire project prior to the enactment of the zoning ordinances, but the evidence in the record indicated it did not do so for financial reasons. Id.
Similarly, in F.B.R. Investors , a developer owned fifteen acres on James Island, on which it planned to build a multi-family project consisting of quadruplexes; the land was zoned for such use. 303 S.C. at 525-26, 402 S.E.2d at 190. After receiving preliminary approval from the county, the developer decided to develop the property in two phases and began to build Phase I. Id. at 526, 402 S.E.2d at 190. Charleston County Council subsequently adopted the "James Island Land Use Plan," which "called for all undeveloped land along two lane roads on James Island to be zoned for single family use," including the developer's land. Id. Thereafter, the developer **67 brought an action claiming it had a vested right to complete Phase II as a multi-family development. Id. at 526, 402 S.E.2d at 191. The circuit court agreed, holding the developer had a vested right to build Phase II because it had completed fifty-five percent of the total project and-although no building permits had been obtained for Phase II-the developer had made substantial expenditures for the entire development. Id. This court reversed, noting the developer had neither obtained building permits nor begun construction on Phase II. Id. at 527, 402 S.E.2d at 191. Although the developer could have developed the tract as one project, "it chose to divide it into two projects." The developer's expenditures-such as a water system, drainage and sewer lines-were "directed toward the completion of Phase I. *240 Phase II was essentially barren land when the zoning change occurred." Id.
The analyses of Friarsgate and F.B.R. Investors apply to this matter. Here, in both the narrative included as part of the Church's initial development application and its 2007 application, the Church stated Phase I included the sanctuary, grass parking spaces, and asphalt and concrete paving; Phase II consisted of an 11,250 square foot fellowship hall. At the Planning Commission's hearing, the Church's pastor acknowledged the fellowship hall was part of the second phase of the project. And on its face, the Church's 1997 development permit stated it expired two years from the approval date "unless substantial improvement has occurred." Although the Church made improvements to the site, these improvements were directed toward the construction of Phase I-the sanctuary and parking area. See id. at 527, 402 S.E.2d at 191 (holding a developer did not have a vested right to complete Phase II of its project because it chose to divide the project into two phases and its prior efforts were "directed toward" completing the first phase). Additionally, the Church's building permit covered only the sanctuary, and the Church's pastor explained the Church postponed building the fellowship hall for financial reasons. See Friarsgate , 290 S.C. at 272, 349 S.E.2d at 895 (holding the developer did not have a vested right to complete a condominium project because it could have obtained building permits for all fourteen buildings prior to the enactment of the zoning ordinance, but chose not to for financial reasons). Further, a review of the record reveals no **68 evidence that the Church sought to extend the 1997 development permit. Therefore, the master-in-equity erred in finding the 1997 development permit authorized the Church to construct a fellowship hall some ten years later.
B. Denial of New Development Permit
Appellants argue the master erred in reversing the Planning Commission's denial of the Church's application for a new development permit because the evidence supports the Planning Commission's finding that construction of the fellowship hall would significantly increase the occupancy load of the site. We agree.
"Rezoning is a legislative matter. The legislative body's decision in zoning matters is presumptively valid, and the property owner has the burden of proving to the contrary." Harbit v. City of Charleston , 382 S.C. 383, 390, 675 S.E.2d 776, 779-80 (Ct. App. 2009), as amended (May 4, 2009) (citation omitted).
[T]here is a strong presumption in favor of the validity of municipal zoning ordinances, and in favor of the validity of their application, and when the planning commission and the city council of a municipality have acted after reviewing all of the facts, the court should not disturb the finding unless such action is arbitrary, unreasonable, or in clear abuse of its discretion, or unless it has acted illegally and in excess of its lawfully delegated authority.
Id. at 391, 675 S.E.2d at 780. Accordingly, this court may not reverse a municipality's zoning decision if the decision is "fairly debatable." See Knowles v. City of Aiken , 305 S.C. 219, 223, 407 S.E.2d 639, 642 (1991) ("[W]e must leave the City's decision undisturbed if the propriety of that decision is even 'fairly debatable.' ").
In 2006, the County Council enacted the Ordinances, which restricted land use in accident potential zones (APZs) and certain "noise zones" in areas surrounding MCAS-Beaufort.
The AO District shall overlay other zoning classifications that shall be referred to as base zoning. The AO District includes all lands within an established footprint affected by airport operations at [MCAS-Beaufort]. The overlay includes all lands underlying the Noise Zones of 65 DNL
**69 (day-night average sound level) and above, and [APZ]s as designated in the most recent Air Installations Compatible Use Zones (AICUZ) Report for MCAS-Beaufort as authorized for use by the Department of the Navy, and as adopted by the [County Council].
*241 Beaufort County, S.C., Code of Ordinances, Appendix A1 § 1 (2006).[5] The Ordinances require property owners within the district to be notified of their location within the district "to increase public awareness and to ensure the general safety and welfare of persons affected by adverse impacts common to military aircraft operations." Under the Ordinances, APZs are divided into three categories: (1) "Clear Zone" areas at the end of the runway which possess a high potential for accidents; (2) "APZ-1" areas that possess a "significant potential" for accidents; and (3) "APZ-2" areas that possess a "measurable potential for accidents." Id.
In 2007, when the Church applied for the new development permit, the Ordinances allowed "non-conforming places of assembly and worship [to] expand[ ] by up to 15% in accordance with Table 106-9 provided that the expansion does not increase the occupant load of the building." Beaufort County, S.C., Code of Ordinances, Appendix A1 § 7(A)(6) (2006).[6]
We find the master erred in reversing the Planning Commission's denial of the Church's permit application because the evidence in the record clearly supports the Planning Commission's finding that the fellowship hall would increase the occupant load for the site. See Arkay, LLC , 418 S.C. at 91-92, 791 S.E.2d at 308 ("This court will not reverse a zoning board's decision unless the board's findings of fact have no evidentiary support or the board commits an error of law."). At the Planning Commission's hearing on remand, Fire Marshal Tim Ogden explained, "[T]he occupant load is defined in the fire code as the maximum number of people allowed in a **70 building." Ogden testified the current occupant load for the Church's site was 329 for the sanctuary. The occupant load for the Church's fellowship hall could range from 533 to 1,600, depending on a variety of factors, including the number of exits and use of the building, but a final occupant load could not be determined until completion of the building.
The only evidence presented to the Planning Commission that the fellowship hall would not increase the occupant load was the Church's assertion that the fellowship hall and the sanctuary would not be used at the same time. However, the Fire Marshal clarified that fire codes view occupant load for a sanctuary as separate from that for a fellowship hall where these are two separate buildings. Regardless of whether the fellowship hall would present only a fifteen percent increase of disturbed area at the site, its construction would at least double the occupant load. Therefore, we reverse the master-in-equity and reinstate the Planning Commission's denial of the Church's permit application. See id . at 91, 791 S.E.2d at 308 ("The appellate court gives 'great deference to the decisions of those charged with interpreting and applying local zoning ordinances.' ").
II. Variance Request
In reversing the Zoning Board's decision to deny the variance, the master emphasized that "[l]ike the Planning Commission, [the Board] is assuming that the Fellowship Hall and the existing building would be occupied simultaneously (as opposed to alternatively), which is an assumption that has no evidentiary support." The master found that because the fellowship hall would not increase the occupant load, the Zoning Board's findings were unsupported by the evidence. As noted above, this was error because abundant evidence supported the Zoning Board's occupancy load concern.
"When deciding whether to grant a variance, a local board must be guided by standards which are specific in order to prevent the ordinance from being invalid and arbitrary." Rest. Row Assocs. , 335 S.C. at 214, 516 S.E.2d at 445. "Granting a variance is an exceptional power which should be sparingly exercised and can be validly used *242 only where a situation falls fully within the specified conditions." **71 Id. at 215, 516 S.E.2d at 445-46. The variant applicant bears the burden of proving its entitlement to a variance. Id. at 216, 516 S.E.2d at 446. A board's denial of a request for a variance is correct if the variant applicant fails to meet all requirements of a county's variance ordinance. Id.
At the time of the Church's request for a variance, the County Code of Ordinances allowed the Board to grant a variance "under limited circumstances, [for] a building or structure that does not comply with this chapter's standard when strict enforcement would represent a unique, undue, and unnecessary hardship." Beaufort County, S.C., Code of Ordinances, Section 106-521 (2006). To grant such a hardship variance, the Zoning Board considered whether:
(1) There are extraordinary and exceptional conditions pertaining to the particular piece of property. Extraordinary conditions could exist due to topography, street widening, beachfront setback lines or other conditions which make it difficult or impossible to make reasonable use of the property.
(2) These conditions do not generally apply to other property in the vicinity.
(3) Because of these conditions, the application of this chapter to the particular piece of property would effectively prohibit or unreasonably restrict utilization of the property.
(4) The authorization of a variance would not adversely affect adjacent property or the public good. Also, the character of the district would not be harmed by the granting of the variance.
(5) The hardship of which the applicant complains must:
a. Relate to the applicant's land, and not to the applicant's personal circumstances;
b. Be unique, or nearly so, and not one common to many surrounding properties;
c. Not be the result of the applicant's own actions; and
d. Be one suffered by the applicant and not the adjoining landowners or the general public.
**72 Beaufort County, S.C., Code of Ordinances, Section 106-522(a) (2006). In addition, it was necessary that the Zoning Board find the variance:
(1) Is the minimum necessary to relieve the unnecessary hardship and permit a reasonable use of the land;
(2) Will not be injurious to the neighborhood surrounding the land where the variance is proposed and is otherwise not detrimental to the public welfare;
(3) Is in harmony with this chapter's purposes and intent; and
(4) Is consistent with the comprehensive plan.
Beaufort County, S.C., Code of Ordinances, Section 106-522(b) (2006).
In its appeal to the Zoning Board, the Church contended the "extraordinary and exceptional conditions" entitling it to a variance were that it obtained the 1997 development permit, which it believed covered the fellowship hall, prior to the enactment of the Ordinances. The Church further argued it was entitled to a variance because it believed the occupant load would not increase. Because such circumstances generally did not apply to other property in the area, the Church claimed it satisfied the hardship conditions. The Church asserted it would be unreasonable to restrict the use of the property to only the sanctuary because the fellowship hall was "a reasonable adjunct use" and the expansion would not harm the public good because "its mission ... by definition is to promote the public good." Finally, the Church noted the County could use the fellowship hall in conjunction with the County's emergency preparedness plan.
In denying the Church's request for a variance, the Zoning Board found the Church's request did not meet the criteria of Section 106-522 because:
a. There were no extraordinary and exceptional conditions pertaining to this particular piece of property.
b. The authorization of the variance would adversely affect the adjacent properties or the public good. Also, the character of the district would be harmed by granting the variance.
*243 **73 c. [The requested variance] was not in harmony with the chapter's purposes and intent; and
d. [The requested variance] was not consistent with the comprehensive plan.
We find there is evidence in the record to support the Zoning Board's findings. In codifying the zoning restrictions for the AO District, County Council specified the purpose of the District, recognizing the public safety concerns in areas surrounding MCAS-Beaufort. Further, County Council required that property owners within the District to be notified "to increase public awareness and to ensure the general safety and welfare of persons affected by adverse impacts common to military aircraft operations." Beaufort County, S.C., Code of Ordinances, Appendix A1 § 1 (2006). Because of the risks inherent to the AO District, the Ordinances restrict property uses and building expansions therein to limit the potential number of people at risk should an accident occur. Beaufort County, S.C., Code of Ordinances, Appendix A1 § 5 (2006). According to the chairman of the board of trustees for the Church, the Church was classified as an APZ-2 area, meaning it possessed a "measurable potential for accidents."
Constrained by our standard of review, we cannot disregard the evidence supporting the Zoning Board's finding that allowing the Church to more than double its potential occupant load would "adversely affect ... the public good" and be inharmonious with the purposes and intent of the County's legislation addressing the Airport Overlay District. Accordingly, we find the master-in-equity erred in reversing the Zoning Board's denial of the Church's variance request.
Conclusion
Based on the foregoing, we reverse the orders of the master-in-equity and reinstate the decisions of the Beaufort County Planning Commission and Zoning Board.
REVERSED.
HUFF and GEATHERS, JJ., concur.

Table 106-9 referenced, inter alia , conforming uses and structures, correction of nonconformities, setbacks, density standards, and feasible landscaping and buffers.

There is no transcript or recording of this hearing. The Planning Commission's minutes from December 3, 2007, are included in the record; however, there are four pages missing, and it appears that these missing pages reported the Planning Commission's discussion of the Church's application.

S.C. Code Ann. §§ 6-29-820 through 840 sets forth the requirements and procedures for appeals from local zoning boards to the circuit court.

No development permit has ever been issued for "Phase II," the fellowship hall structure shown on the plat submitted with the Church's application for the 1997 development permit. The submitted narrative for the project describes Phase II as "an 11,250 [square foot] building shown on the enclosed plans as the building south of the church." At oral argument, Beaufort County's counsel explained that for the 1997 development permit to have included both the church building and the fellowship hall, it would have been necessary for the Church to seek a permit for the development of 27,122 square feet (the total for the two proposed structures), along with the 25,250 square feet of proposed asphalt and concrete paving. Instead, the permit application sought to develop only Phase I-the 15,872 square feet for the church building-along with the accompanying square footage for the asphalt and paving on the lot.

The Ordinances have been recodified in the Beaufort County Community Development Code.

County Council amended the Ordinances in 2008, to allow places of assembly and worship to expand by up to 15 percent of the existing floor area provided the expansion did not increase the occupant load of the building and so long as the expansions were minor "to accommodate bathrooms, storage space, kitchens, and office space."