# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Grays Hill Baptist Church, Petitioner,

v.

Beaufort County, and The Beaufort County Zoning Board of Appeals, Defendants,

and

The United States of America, Defendant-Intervenor,

Of which Beaufort County and The United States of America are the Respondents.

Appellate Case No. 2019-001201

———————

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

———————

Appeal From Beaufort County
Marvin H. Dukes, III, Master-in-Equity

———————

Opinion No. 27995
Heard May 20, 2020 – Filed September 16, 2020

———————

## REVERSED

———————

H. Fred Kuhn, Jr., of Moss Kuhn & Fleming, P.A., of Beaufort, for Petitioner Grays Hill Baptist Church.

Mary Bass Lohr and Catherine L. Floeder, both of Howell

Gibson & Hughes, P.A., of Beaufort, for Respondent Beaufort County.

Assistant United States Attorney Lee Ellis Berlinsky, of Charleston, for Respondent The United States of America.

---

**JUSTICE HEARN:**  This appeal arises from Beaufort County's refusal to issue Grays Hill Baptist Church a construction permit to build a fellowship hall adjacent to its existing sanctuary.  The court of appeals reversed the master's order and reinstated the Beaufort County Planning Commission's decision to deny the permit because the Church's 1997 development permit did not include the fellowship hall and had expired.  We reverse the decision of the court of appeals and order Beaufort County to issue the Church a construction permit for the fellowship hall under its original 1997 development permit.

## FACTUAL/PROCEDURAL BACKGROUND

Grays Hill Baptist Church is located on a parcel of property consisting of 9.35 acres in Beaufort County, South Carolina.  In December 1996, the Church applied to the County for a permit to develop its property in accordance with a development plat, which depicted two buildings—the church and a fellowship hall—the latter of which is the building at issue in this appeal.  The application for the permit contained a narrative describing the development of a 15,872 square foot church and an additional 11,250 square foot building south of the church, as well as the infrastructure to support both buildings.  The Church received the development permit in January 1997, which provided, "All permits expire two (2) years from the date of approval *unless substantial improvement has occurred* or final subdivision plat has been recorded." (emphasis added).

One month later, the County issued the Church a construction permit to build the proposed church.  In December 1997, the Church completed construction of all improvements shown in the development plat except for the fellowship hall.  The improvements included the church building and all of the parking, paving, and infrastructure for both buildings.  The Church did not construct the fellowship hall then due to financial constraints.  The County issued the Church a certificate of compliance, which allowed the building to be occupied.

In December 2006, the Beaufort County Council adopted an ordinance creating an airport overlay district, which encompassed all lands located near the Marine Corps Air Station, and set forth certain land use limitations and restrictions.

After the ordinance's enactment, the Church's property was rezoned as a "place of assembly and worship" and became a "nonconforming use" subject to an expansion limitation of up to 15% of the disturbed area, provided the expansion did not increase the occupant load of the site.[1] Shortly thereafter, the Church requested a construction permit to complete development of its property and build the fellowship hall. The County refused to issue the permit and instead directed the Church to seek a zoning variance[2] and to apply for a new development permit.

As the County instructed, the Church applied for a new development permit and met with the County's Development Review Team (DRT). The DRT reviewed the Church's application and plat, and relying on the airport overlay district ordinance, denied the request for a new permit based on a finding that the proposed fellowship hall could increase the occupant load of the property. The Church appealed to the Beaufort County Planning Commission, which affirmed the DRT's decision not to issue the permit. The Commission found the Church's original master plan had both a church and fellowship hall planned. However, the Commission held the permit application divided the project into two phases and sought only to construct a 15,872 square foot building. The Commission also determined that all construction requested in the initial development was completed in 1997, and no request to build the fellowship hall was made until 2007. In addition, the Commission agreed with the DRT's finding that construction of the fellowship hall could increase the occupant load of the property in violation of the ordinance. At the hearing, the Church explained that the fellowship hall would not be occupied while church services were being held in the sanctuary and vice-versa.[3] Currently, the sanctuary is outfitted with folding chairs so that when the Church holds an

---

[1] The ordinance was later amended in February 2008 to provide that nonconforming places of assembly and worship may be expanded up to 15% *of the existing floor area*, and that only minor expansions to accommodate bathrooms, storage space, kitchens, and office space may be permitted.

[2] The Church applied for a variance and appealed the Zoning Board's decision denying its request to the court of appeals. However, the Church is no longer challenging this decision, and it is not before this Court.

[3] During the hearing, the Church noted that prior to the ordinance's adoption, a county official assured the Church's pastor and building committee chairman that the ordinance would not affect its ability to complete development of the property under the existing development permit.

activity other than services, the chairs can be folded and tables can be set up. Once the fellowship hall is built, it would be used only for activities, such as a dinner or social function, and permanent pews would be installed in the sanctuary for worship services. The Church even offered to stipulate that use of the two buildings would be mutually exclusive. Nevertheless, the Commission concluded the number of persons that might be on the site at any one time could increase if the fellowship hall were allowed to be constructed.

The master-in-equity[4] reversed, holding the Planning Commission committed an error of law when it affirmed the DRT's decision not to honor the Church's original 1997 development permit and instead required the Church to apply for a new development permit.[5] Although the Commission found the original master plan had both a church and a fellowship hall planned, it concluded the development of the fellowship hall was not approved. Contrary to the Commission's finding, the master noted the fellowship hall was plainly and clearly shown on the development plat and included in the permit. The master decided the Commission had erroneously confused the development permit—which expressly encompassed the church, fellowship hall, and supporting infrastructure—with the construction permit, which was limited to the church and infrastructure. In addition, the master held the Commission erred in failing to find the Church's construction permit application was grandfathered because the development permit and plat included the fellowship hall. The master further disagreed with the Commission's finding that there was no evidence to support the continued validity of the original development permit, holding the evidence was undisputed that substantial improvement occurred within two years of the permit's issuance through completion of the church building as well as all infrastructure necessary to support both the church and the fellowship hall. Accordingly, the master concluded the original permit did not expire and directed the County to allow the Church to proceed with construction of the fellowship hall

---

[4] The Church appealed the Commission's decision to the circuit court pursuant to S.C. Code Ann. section 6-29-1150 (2004 & Supp. 2019). Therefore, Judge Dukes was evidently sitting by designation as a special circuit court judge in this appeal.

[5] The United States of America intervened in the appeal before the master-in-equity in light of its federal interest in the proper application and enforcement of the airport overlay district ordinance, which was implemented to protect the public and the Marine Corps Air Station located in Beaufort County.

and complete development of its property.[6]

　　　The County and the United States appealed the master's decision to the court of appeals, which reversed and reinstated the Planning Commission's decision. The court held the master erred in finding the Church's 1997 development permit applied to the construction of the fellowship hall because the permit had expired, as the improvements were directed only toward the construction of the church and parking area.[7] We granted the Church's petition for a writ of certiorari to review the court of appeals' decision.

## ISSUE PRESENTED

　　　Did the court of appeals err in reversing the master's decision that the Church's original 1997 development permit included the fellowship hall and did not expire?[8]

---

[6] As an additional sustaining ground, the master held the Commission abused its discretion in refusing to issue a new development permit under the airport overlay district ordinance because there was no evidence to support the Commission's finding that the number of persons that could be on the site at any one time would be increased if the fellowship hall were allowed. The master noted a restriction could be placed on the new permit that the fellowship hall shall not be occupied at the same time as the sanctuary, and the restriction could be enforced in the same manner as any other zoning restriction. Importantly, the master held the Commission erred in adopting a definition of "occupancy load" not set forth in the ordinance but instead derived from the fire code, which defined the term as the maximum number of people allowed in a building without any consideration for the use to which the building will be put. Therefore, the master concluded the Commission abused its discretion in refusing to issue a new development permit.

[7] In addition, the court held the Commission properly denied the Church's application for a new development permit because the evidence supported the Commission's finding that construction of the fellowship hall would significantly increase the occupancy load of the site. The court relied on the meaning of "occupant load" in the fire code in finding the fellowship hall would "at least double the occupant load."

[8] The Church's petition also challenged the court of appeals' holding that, under the restrictions imposed by the airport overlay district ordinance, construction of the fellowship hall would increase the occupancy load of the site, and therefore, the

## STANDARD OF REVIEW

This Court will not reverse the findings of a county review board unless the board's findings have no evidentiary support or the board has committed an error of law. *Charleston Cty. Parks & Recreation Comm'n v. Somers*, 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995). In the zoning context, a decision of the reviewing body will not be disturbed if there is evidence in the record to support its decision. *Peterson Outdoor Advert. v. City of Myrtle Beach*, 327 S.C. 230, 235, 489 S.E.2d 630, 632 (1997). Indeed, we will not substitute our judgment for that of the reviewing body, even if we disagree with the decision. *Talbot v. Myrtle Beach Bd. of Adjustment*, 222 S.C. 165, 173, 72 S.E.2d 66, 70 (1952). "However, the decision of the zoning board will not be upheld where it is based on errors of law . . . ." *Hodge v. Pollock*, 223 S.C. 342, 348, 75 S.E.2d 752, 754 (1953). Instead, "a decision of a municipal zoning board will be overturned if it is arbitrary, capricious, has no reasonable relation to a lawful purpose, or if the board has abused its discretion." *Rest. Row Assocs. v. Horry Cty.*, 335 S.C. 209, 216, 516 S.E.2d 442, 446 (1999).

## DISCUSSION

The Church argues the court of appeals erred in finding its original 1997 development permit did not apply to the construction of the fellowship hall because the permit had expired. The Church contends the court erroneously held the original development permit did not include the fellowship hall and that the improvements were directed only toward the construction of the church and parking area. Instead, the Church claims the master-in-equity correctly held the development permit and plat clearly and plainly included both the church and the fellowship hall, and

---

Planning Commission properly denied its application for a new development permit. However, the Church was not required to request a new development permit governed by the ordinance's restrictions because we find the original 1997 development permit included the fellowship hall and did not expire. Because our determination concerning the validity of the original permit resolves this case, we need not address this issue. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues when disposition of a prior issue is dispositive). We leave for another day the interpretation of Beaufort County's airport overlay district ordinance regarding nonconforming uses and the meaning of "occupant load" in this context.

substantial improvement occurred within two years of the permit's issuance because the church building and all infrastructure to support both buildings was completed.

In contrast, the County contends the Church was required to apply for a new development permit because its original permit only approved the development of a 15,872 square foot church building. In support of this contention, the County relies on the fact that the square footage of the proposed church is indicated on a document in the record the County alleges is part of the permit application, which is almost entirely indecipherable, presumably because it was copied from microfilm. We agree with the Church that the fellowship hall was also approved for development in the original permit. In our view, the County completely overlooks the fact that the permit itself approved development of the Church's entire 9.35 acre property as depicted in the plat and that the narrative included in the permit application described both the church and the fellowship hall.

The County further claims that even if the Church had requested a construction permit for the fellowship hall immediately following the issuance of the original development permit, it still would have been required to apply for another development permit for the fellowship hall because it was not included in the original permit. We cannot accept this interpretation of the original permit because it is belied by the record on appeal. Instead, we hold the fellowship hall was included in the original permit and approved for development because it is clearly and plainly shown in the permit application and plat.

The County also argues the original permit expired when the certificate of compliance was issued because the certificate effectively "closed out" the development permit—despite the fact that the permit itself indicates that it remains valid if substantial improvement has occurred within two years of its issuance. This argument is unavailing. The certificate of compliance does not state that its issuance serves to close out the development permit. We note the County asserted at oral argument that while the certificate does not explicitly state that it does so, that is the effect of the document. The County was unable to cite anything in the record or reference any provision of law or written department procedure to support this contention; instead, counsel simply stated, "That's the procedure in the planning department, the planning world." We reject the County's argument that the certificate of compliance closed out the development permit merely based on "planning department procedure."

In addition, both the County and the court of appeals rely on *Friarsgate, Inc. v. Town of Irmo*, 290 S.C. 266, 349 S.E.2d 891 (Ct. App. 1986) and *F.B.R. Investors v. County of Charleston*, 303 S.C. 524, 402 S.E.2d 189 (Ct. App. 1991) to support

the conclusion that the original development permit had expired, and a construction permit for the fellowship hall could not be issued based on that permit. We disagree with the court's application of those cases and find they are distinguishable.

In *Friarsgate*, the builder decided to develop condominiums as two separate projects—the first five units and then the remaining eleven units—because the development was contingent on the financial success of the first units. 290 S.C. at 272, 349 S.E.2d at 895. Indeed, the court noted, "[i]f the market response to the first units was poor, the project would not be completed. Thus, at the time the zoning ordinance was enacted, Friarsgate had no firm commitment to build the project." *Id*. Based on these facts, the court held Friarsgate did not have a vested right to complete the second project. *Id*. at 272-73, 349 S.E.2d at 895. Similarly, in *F.B.R. Investors*, the builder decided to develop the tract in two phases, constructing twenty-five duplexes on one parcel during Phase I and additional multi-family dwellings on the remaining parcel during Phase II. 303 S.C. at 526, 402 S.E.2d at 190. The court found all substantial expenditures and efforts had been made toward the construction and completion of Phase I and that "Phase II was essentially barren land when the zoning change occurred." *Id*. at 527, 402 S.E.2d at 191. As a result, the court held the investors did not establish a vested right to complete Phase II. *Id*. The court's decisions in *Friarsgate* and *F.B.R. Investors* derived from trial court determinations that the landowner had acquired a vested right to complete development prior to the enactment of a zoning ordinance. In contrast, there was no vested rights determination made in this case, and this issue was not timely raised by any party to the litigation.[9] Therefore, the vested rights principles applied in those cases do not

---

[9] The County raised the issue of vested rights in its motion to reconsider the master's final order, arguing his decision amounted to a vested rights determination and was error in light of the fact that the Church did not pursue any claim under the Vested Rights Act, S.C. Code Ann. sections 6-29-1510 to -1560 (Supp. 2019). The master noted the issue was not raised until after the case had already been tried and a final order was entered, and therefore, the County's contention was not timely. *Johnson v. Sonoco Prods. Co.*, 381 S.C. 172, 177, 672 S.E.2d 567, 570 (2009) ("An issue may not be raised for the first time in a motion to reconsider."). Regardless, the master held the Vested Rights Act did not affect the decision of this case because the Act went into effect on July 1, 2005—eight years after the development permit's issuance in 1997. The master also noted that, contrary to the County's argument, the purpose of the Act was to protect, preserve, and create vested rights in development permits. *See* H.R. 3858, 2003-2004 Gen. Assemb., 115th Sess. (S.C. 2004). Accordingly, the master determined, and we agree, that the Act did not empower the

apply here.[10]

Moreover, the Church's development permit application contemplated phased *construction* of two buildings, not phased *development*. Contrary to the facts in *Friarsgate*, we agree with the master-in-equity that the Church sought a permit for the development of one, unified project—the church and the fellowship hall as shown in the plat. In addition, unlike *F.B.R. Investors*, the Church made substantial improvements toward both the construction of the church as well as the proposed construction of the fellowship hall. The Church paved roadways, constructed all of the parking, and installed storm water management, septic tanks, and drain fields for both buildings. Therefore, we find the court of appeals' reliance on *Friarsgate* and *F.B.R. Investors* misplaced, as those cases are inapplicable to the facts of this case.

We agree with the master-in-equity that the Planning Commission erred in finding that the Church's original 1997 development permit did not authorize the development of the fellowship hall because the proposed building was clearly indicated in the permit application and plat. There is no evidence in the record to support the Commission's finding that the original permit only authorized development of the church and that the certificate of compliance closed out the 1997 development permit. Consequently, the County erred in requiring the Church to request a new development permit. We also find the court of appeals erred in

---

County to rescind or revoke the development permit which it had already issued to the Church.

[10] To the extent our jurisprudence on the common law doctrine of vested property rights does apply to this case, we find the Church was permitted to continue its nonconforming use and to construct the fellowship hall at the time the ordinance was enacted because the fellowship hall was included in the original development permit which did not expire. *See Vulcan Materials Co. v. Greenville Cty. Bd. of Zoning Appeals*, 342 S.C. 480, 498, 536 S.E.2d 892, 901 (Ct. App. 2000) ("A landowner acquires a vested right to continue a nonconforming use already in existence at the time his property is zoned in the absence of a showing that the continuance of the use would constitute a detriment to the public health, safety or welfare."). We also hold the fellowship hall was not a "mere contemplated use" but instead a planned addition to the existing sanctuary and approved by the County in the original development permit. *But cf. Lake Frances Props. v. City of Charleston*, 349 S.C. 118, 124-25, 561 S.E.2d 627, 631 (Ct. App. 2002) ("[T]he mere contemplated use of property by a landowner on the date a zoning ordinance becomes effective precluding such use is not protected as a nonconforming use.").

holding the original permit expired because substantial improvement occurred within two years of the permit's issuance, and the improvements were directed toward the construction of both the church and the fellowship hall. Therefore, we hold the Church's original development permit remains valid, and the County must issue the Church a construction permit for the fellowship hall under the original development permit and plat. The construction permit for the fellowship hall is grandfathered by virtue of the continued validity of the original development permit and is therefore not subject to the airport overlay district ordinance restrictions. Because our decision regarding the validity of the original development permit resolves this case, we need not determine whether the court of appeals erred in affirming the Commission's denial of the Church's application for a new development permit. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the court of appeals and order Beaufort County to issue Grays Hill Baptist Church a construction permit to build the fellowship hall in accordance with the plat submitted under its original 1997 development permit.

**REVERSED.**

**BEATTY, C.J., KITTREDGE and JAMES, JJ., concur. FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** I believe there is evidence in the record to support the Beaufort County Planning Commission's determination the original development permit expired before the Church sought a construction permit for the fellowship hall. I also believe there is evidence in the record to support the Planning Commission's denial of a new development permit. While the Church makes a compelling case for lenience, our standard of review requires we defer to the Planning Commission, not to the circuit court. I respectfully dissent.